In the

# United States Court of Appeals

### For the Seventh Circuit

No. 12-1774

HOYT RAY,

*Plaintiff-Appellant*,

*v.*

WEXFORD HEALTH SOURCES, INC., and
VIPIN K. SHAH,

*Defendants-Appellees*.

Appeal from the United States District Court
for the Central District of Illinois.
No. 09-CV-3071—**Sue E. Myerscough**, *Judge*.

SUBMITTED JANUARY 23, 2013—DECIDED FEBRUARY 7, 2013

Before EASTERBROOK, *Chief Judge*, and ROVNER and
TINDER, *Circuit Judges*.

PER CURIAM. Since July 2006 Hoyt Ray has experienced
pain in one of his shoulders. He contends that the pain
stems from an injury and that an MRI scan would point
the way toward successful treatment; Dr. Vipin K. Shah,
Ray's treating physician at Western Illinois Correctional
Center, believes that the pain stems from arthritis and

that a scan would not help in diagnosis and treatment. Ray contends in this suit under 42 U.S.C. §1983 that Dr. Shah is wrong—so far wrong that he has violated the Constitution's cruel and unusual punishments clause. See *Farmer v. Brennan*, 511 U.S. 825 (1994); *Estelle v. Gamble*, 429 U.S. 97 (1976). The district court granted summary judgment to Shah, concluding that, right or wrong about the source of Ray's pain or the best diagnostic tools, Shah had not displayed deliberate indifference toward Ray's serious medical condition.

That Ray's pain is a serious condition is common ground among the litigants. For his part, Ray concedes that he has received medical treatment from several physicians. He has been examined often, x-rays have been taken, and physicians have prescribed painkillers—principally Ultram, a synthetic analgesic often used in the treatment of arthritis. The medical staff also has arranged for Ray to be assigned a lower bunk, so that he can avoid arm motions that he has found painful. Ray is sure that, with the assistance of an MRI scan, physicians could do better. But both *Farmer* and *Gamble* observe that medical malpractice is not actionable under §1983. 511 U.S. at 835; 429 U.S. at 106. The district court concluded that even a conclusion of malpractice would be unwarranted. Ray does not deny that, *if* his pain stems from arthritis, his treatment is appropriate. And he has not produced evidence that norms of professional conduct call for using an MRI to determine whether a diagnosis of arthritis based on x-ray films may be mistaken.

Because Ray's claim fails the objective component of cruel-and-unusual-punishments analysis, we need not consider his contention that Dr. Shah displayed subjective antipathy. According to Ray, Shah once stated that "he didn't care how much pain I was in or how bad my shoulder hurt, he wasn't sending me for an MRI . . . so I was going to have to live with it." Ray calls this statement callous, and perhaps it was—though it may have been just an effort to get across Shah's view that a patient's level of pain does not affect the proper use of MRI scans to verify or refute a diagnosis of arthritis. The fact remains that, far from ignoring Ray's pain, Shah treated him for arthritis.

Ray has sued Shah's employer, Wexford Health Sources, which holds a contract to provide medical care in Illinois's prisons. Section 1983 does not create vicarious liability. See *Monell v. New York City Dep't of Social Services*, 436 U.S. 658 (1978). An organization is answerable for its own policies, but if a given policy causes no harm to the plaintiff there is no possible relief. Ray contends that Wexford has a no-MRI policy; Wexford denies this and maintains that its staff can order MRI scans when medically appropriate. It is unnecessary to decide what the firm's policy may be, since Ray has not established a constitutional problem with his treatment and thus did not suffer actionable injury from the policy he attributes to the corporation.

We conclude with a discussion of Ray's request that the district court assist him in recruiting counsel. Before this case was assigned to Judge Myerscough,

Judge Baker denied Ray's motion for "appointment" of counsel. That word is imprecise; there is no statutory authority to "appoint" counsel in litigation under §1983. See *Mallard v. United States District Court for Southern District of Iowa*, 490 U.S. 296 (1989); *Pruitt v. Mote*, 503 F.3d 647, 653 (7th Cir. 2007) (en banc). All a district court can do is seek a volunteer. The reason Ray asked the judge to "appoint" counsel, however, is that this is the word used in forms the district court supplies for the purpose. The United States District Court for the Central District of Illinois could head off potential misunderstanding by revising its forms.

Judge Baker gave as one reason for denying Ray's motion his failure to submit proof that he had sought legal assistance. Here, too, the district court's form may be doing litigants a disservice. Ray stated on the form that he had contacted three lawyers; he gave their names and addresses, though he did not attach correspondence. If the district court believes that proof in the form of letters written, and answers received, is essential, it should tell litigants so. All the form demands is a statement that an effort has been made. The form used by the United States District Court for the Southern District of Illinois calls for evidentiary support; the form used by the Central District does not. District courts should ensure that forms written by the court's staff (and approved by the judges) do not mislead litigants about the criteria the court actually applies to their requests.

We do not see any need for a remand in this case, however. Ray has demonstrated an ability to litigate his

case to the degree contemplated in *Pruitt*. He was able to compel the defendants to produce evidence in discovery, and he submitted legal memoranda and affidavits. He asked for the appointment of a medical expert under Fed. R. Evid. 706(a); the district judge said no, and Ray does not contest that decision. A lawyer would have encountered the same obstacle.

AFFIRMED