In the

# United States Court of Appeals

## For the Seventh Circuit

No. 14-1805

DEFENDER SECURITY COMPANY,

*Plaintiff-Appellant,*

*v.*

FIRST MERCURY INSURANCE COMPANY,

*Defendant-Appellee.*

Appeal from the United States District Court for the
Southern District of Indiana, Indianapolis Division.
No. 1:13-cv-00245 — **Sarah Evans Barker**, *Judge.*

ARGUED SEPTEMBER 30, 2014 — DECIDED SEPTEMBER 29, 2015

Before KANNE, WILLIAMS, and HAMILTON, *Circuit Judges.*

KANNE, *Circuit Judge.* Appellant Defender Security Company ("Defender") purchased a commercial general liability insurance policy from Appellee First Mercury Insurance Company ("First Mercury"). Defender timely tendered a claim to First Mercury, based on a lawsuit filed against Defender in California state court. First Mercury denied coverage and refused to defend Defender in that lawsuit. Defender filed the instant suit in the Southern District of Indiana,

alleging breach of contract and bad faith, and seeking a declaratory judgment that First Mercury owed it a duty to defend. First Mercury filed a motion to dismiss, which the district court granted. We affirm.

## I. BACKGROUND

On July 25, 2012, Kami Brown filed a class action complaint in California state court ("the *Brown* suit"). In her complaint, she alleged that she contacted Defender by telephone in response to its advertisement for a home security system. Brown alleged that, over the course of several calls in May 2012, she provided Defender with personal information, including her full name, address, date of birth, and social security number.

She claimed that Defender recorded those calls without her permission and without notifying her of the recording. She further alleged that Defender used "call recording technology" that allowed it to "record all of its telephonic conversations with consumers" and to "store these recordings for various business purposes." According to Brown, Defender "directed, trained, and instructed" its employees and agents to engage in those recordings. And, Brown alleged, all class members were subjected to similar conduct, because Defender "systematically recorded all inbound and/or outbound telephone conversations," without warning the parties that their conversations were being recorded.

These actions, Brown claimed, constituted violations of California Penal Code § 632, which prohibits the recording of confidential telephone communications without the con-

sent of all parties, and § 632.7, which does the same for communications made from a cellular or cordless phone.[1]

Defender owned a commercial general liability insurance policy ("the Policy") issued by First Mercury. In a section entitled "Insuring Agreement," the Policy provided as follows:

> a. We [i.e., First Mercury] will pay those sums that the insured [i.e., Defender] becomes legally obligated to pay as damages because of "personal injury" or "advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal injury" or "advertising injury" to which this insurance does not apply. …
>
> b. This insurance applies to
>
> (1) "Personal injury" caused by an offense arising out of your business, excluding advertising, publishing, broadcasting or telecasting done by you.
>
> (2) "Advertising injury" caused by an offense committed in the course of advertising your goods, products or services.

In a separate definitions section, the policy defined both "advertising injuries" and "personal injuries" as those "arising out of … [o]ral or written publication of material that violates a person's right of privacy."

---

[1] Defender removed the suit to federal court. The parties reached a final settlement, approved on March 18, 2014. *See Kami Brown v. Defender Sec. Co., No.* 2:12CV07319, 2012 WL 5308964 (C.D. Cal. Mar. 18, 2014).

Defender provided First Mercury with timely notice of the *Brown* suit. It asserted that the lawsuit fell within the advertising injury and personal injury coverage provided by the Policy. First Mercury denied coverage and refused to defend.

Defender then filed this action in the Southern District of Indiana, alleging breach of contract and bad faith, and seeking a declaratory judgment that First Mercury owed Defender a duty to defend in the *Brown* suit. First Mercury filed a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. First Mercury argued that the *Brown* suit fell outside the Policy's coverage, and thus that it had no duty to defend. The district court granted the motion to dismiss. Defender appeals.

## II. ANALYSIS

We have diversity jurisdiction over this dispute pursuant to 28 U.S.C. § 1332(a). Defender is an Indiana corporation with its principal place of business in Indiana. First Mercury is an Illinois corporation with its principal place of business in Michigan. The amount in controversy exceeds $75,000.

We review *de novo* a district court's grant of dismissal under Rule 12(b)(6). *Citadel Grp. Ltd. v. Wash. Reg'l Med. Ctr.*, 692 F.3d 580, 591 (7th Cir. 2012). Both parties agree that Indiana law governs.

### A. Duty to Defend

In order to establish that an insurer has a duty to defend, the insured bears the initial burden of establishing that a claim is covered by his policy. If such a showing is made, the burden then shifts to the insurer to prove that an exclusion

applies. *Aearo Corp. v. Am. Int'l Specialty Lines, Ins. Co.*, 676 F. Supp. 2d 738, 744 (S.D. Ind. 2009) (applying Indiana law).

The outcome of this case turns on the interpretation of one word: "publication". Defender's Policy requires that, in order to qualify for coverage under the personal injury and advertising provisions, the subject injury must arise from "oral or written *publication* of material that violates a person's right of privacy" (emphasis added). So in order to establish coverage, Defender must show that publication was alleged or at least argued by Brown. The Policy itself does not define that term, so we must determine the term's meaning, in the context of the Policy.

Defender argues that in order to constitute publication, the subject material need not be communicated to any third party. Neither the *Brown* complaint nor Defender's complaint alleges that Defender communicated the recordings or their contents to any third party. Neither do they allege that any employee, agent, or representative accessed or listened to the recordings after they were made. According to Defender, publication was achieved when the subject material was transmitted to Defender's recording device. In other words, Defender argues, it "published" the information it received from Brown when it "transmitted" that material into the recording device. First Mercury argues, on the other hand, that the definition of "publication" is not as expansive as Defender suggests.

We first consider the plain meaning of the term "publication". *Black's Law Dictionary* provides the following definitions: (1) "[g]enerally, the act of declaring or announcing to the public;" and in the defamation context, (2) "the communication of defamatory words to someone other than the

person defamed." *Black's Law Dictionary* 1264–65 (10th ed. 2014). *Webster's Third New International Dictionary* defines publication as "communication (as of news or information) to the public; public announcement." *Webster's Third New International Dictionary,* 1836 (1993). And the Oxford English dictionary defines it as follows:

> 1.a. The action of making something publicly known; public notification or announcement; an instance of this.
>
> 1.b. *Law.* Notification or communication to a third party or to a limited number of people regarded as representative of the public; an instance of this.
>      …
> 3. The action or fact of making a thing public or common property.

*OED Online* (Oxford University Press, June 2015).

All of those definitions share a commonality: they describe the release of information by the party holding it. This comports with a common-sense understanding, and the common usage, of the term publication. After all, it derives from the word "public," or "exposed to general view." *Webster's Third New International Dictionary,* 1836 (1993). In this case, none of the information obtained by Defender was communicated to any individual or entity. While it was captured by the recording device, that device was wholly maintained by Defender. And, as we described above, Defender offered no information to suggest that any individual ever accessed the recordings.

Yet, Defender argues that the transmission of the information to the recorder constitutes publication, despite the fact that the information was never accessed or shared. Sup-

pose, hypothetically, that Defender had a different policy regarding its incoming customer calls. Imagine that, instead of recording the calls, a Defender sales associate would speak to the customer and take copious notes. He would then place those notes in a paper file, in a filing cabinet. Would that constitute publication? In both cases, the information has been received by Defender; it has been transmitted to a storage medium; and it has been stored in a manner that enables future access.

We see no meaningful distinction between the hypothetical paper notes and the actual audio recording. (The only obvious distinction is that the recording is stored in an oral form, whereas the notes would be stored in written form.) If under Defender's definition, the recording constitutes publication, so must the notes. In our view, this hypothetical illustrates that Defender's suggested definition of publication would encompass a wide variety of acts that would strain (at best) any common understanding or usage of the term publication.

And Indiana courts have, in the defamation context, applied the common usage definition of "publication". In *Bals v. Verduzco*, the Indiana Supreme Court stated that "[i]n an action for defamation, the plaintiff must show that the defamatory matter was 'published,' that is, communicated to a third person or persons." 600 N.E.2d 1353, 1354 (Ind. 1992). So, under Indiana defamation law, "publication" requires communication to a third party.

First Mercury relies heavily on *Doe v. Methodist Hospital* as establishing that, as a matter of law, publication must consist of communication to a third party. 690 N.E.2d 681 (Ind.

1997). We do not agree with First Mercury's reading of *Methodist*.

In that case, the Indiana Supreme Court considered whether Indiana law recognized a cause of action for the "privacy tort" of public disclosure of private facts. Among the elements of that tort, according to the Second Restatement, is the requirement that a person must give "publicity" to the private fact at issue. *Id.* at 692. Following is the relevant passage from the court's analysis:

> A key issue contested in the briefs is whether "publicity" requires disclosure to the general public or whether more isolated disclosures are also actionable. According to the Second Restatement, "publicity" in disclosure law is not the same as "publication" in defamation law. "Publication" *can consist of communication to just one individual*. In contrast, "publicity" requires communication of the information "to the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge."

*Id.* (emphasis added) (quoting Restatement (Second) of Torts § 652(D) cmt. a).

So the question facing the *Methodist* court was whether "publicity," as an element of the tort, required the *broad dissemination* of information. Or, alternatively, could disclosure to *just one individual* suffice? The court looked to a related term, "publication," in the context of defamation law as a guide: and in that context, Indiana law established that publication could be achieved by disclosure to just one person.

That was the extent of the court's foray into "publication." So *Methodist* does not render this an open-and-shut case.

But, as we concluded above, Defender's suggested definition of the term is expansive, and it draws in many activities that cannot be commonly understood as publication. And in the defamation context, Indiana law requires that the defamatory material be communicated to a third party to be actionable. As such, we cannot draw the conclusion that publication includes the mere recording and storage of information when that information is not also communicated to another party or entity.

Defender argues in the alternative that, even if publication does not include transmission to a recording device, the term "publication" is ambiguous. Therefore, "it is to be construed strictly against the insurer and in favor of its insured," triggering First Mercury's duty to defend.

Under Indiana law, a "failure to define terms in an insurance policy does not necessarily make it ambiguous." *Am. Family Life Assurance Co. v. Russell*, 700 N.E.2d 1174, 1177 (Ind. Ct. App. 1998) (citation omitted). And "[a]n ambiguity does not exist simply because a controversy exists between the parties, each favoring an interpretation contrary to the other." *Newnam Mfg., Inc. v. Transcon. Ins. Co.*, 871 N.E.2d 396, 401 (Ind. Ct. App. 2007) (citations omitted). Rather, "an ambiguity exists where the provision is susceptible to more than one reasonable interpretation." *Russell*, 700 N.E.2d at 1177. Where there is ambiguity, "insurance policies are to be construed strictly against the insurer." *Newnam*, 871 N.E.2d at 401 (citation omitted).

Here, the parties each favor a specific interpretation of the term "publication." Defender argues that the term publication is susceptible to its definition, and it points to a decision of the United States District Court of the Southern District of Ohio as supporting its view. In that case, under similar facts, the district court concluded that publication occurred at the moment that the conversation was disseminated to the recording device. *See Encore Receivable Mgmt., Inc. v. Ace Prop. and Cas. Ins. Co.,* No. 1:12-cv-297, 2013 WL 3354571, at *9 (S.D. Oh. Jul. 3, 2013), *vacated on May 19, 2014.*

But, as noted, *Encore* was vacated while on appeal. *Id.* Defender cites to no other cases that establish its view of publication. For the reasons we described above, including Indiana's definition of publication in the defamation context, we conclude that the term publication was not susceptible to Defender's interpretation. It was not ambiguous as used in the Policy.

*B. Dismissal at the Pleading Stage*

Defender argues that the district court erred by "prematurely" granting First Mercury's motion to dismiss. It contends that First Mercury had a duty to investigate the underlying *Brown* claims before refusing to defend, and that it had not adequately investigated those claims at the time that it filed its 12(b)(6) motion. First Mercury argues that it had no duty to investigate the underlying facts, because it was clear from the face of the Policy and the *Brown* complaint that Defender's claims were not covered by the Policy.

We "determine [an] insurer's duty to defend from the allegations contained within the complaint and from those facts known or ascertainable by the insurer after reasonable

investigation." *Newnam*, 871 N.E.2d at 401 (citations omitted). But, "[i]f the *pleadings reveal* that a claim is clearly excluded under the policy, then no defense is required." *Id.* at 401 (emphasis added) (citation omitted). Or, "when the *underlying factual basis* of the complaint, even if proved true, would not result in liability under the insurance policy, the insurance company can properly refuse to defend." *Monroe* 677 N.E.2d at 623 (emphasis in original) (citing *Cincinnati Ins. Co. v. Mallon*, 409 N.E.2d 1100, 1105 (Ind. Ct. App. 1980)).

Defender's claim is this: if Defender were permitted to move past the pleading stage into discovery, it could "likely show" that the recordings were "communicated to others within the organization." And therefore, the recordings would meet the "publication" requirement imposed by the Policy.

The first problem with Defender's argument is that it didn't need discovery to uncover whether the recordings had been communicated to others within its organization. Defender possessed that information from the outset—it was *Defender's information*, within its access and control. But at no point did Defender allege that any individual accessed the recordings—not in its complaint, its opposition to summary judgment, or its briefs to this court.

Defender contends that it could not have raised those allegations at the pleading stage, because "attaching evidence at the 12(b)(6) stage to send the Court on a fact-finding mission would have been inappropriate." Defender, however, misunderstands the pleading requirements imposed by the Federal Rules of Civil Procedure. *See* Fed. R. Civ. P. 8, 12(b)(6). To survive dismissal, the complaint must give enough factual information to "state a claim to relief that is

plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007). But "allegations in the form of legal conclusions are insufficient." *McReynolds v. Merrill Lynch & Co.*, 694 F.3d 873, 885 (7th Cir. 2012) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). As are "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Adams v. City of Indianapolis*, 742 F.3d 720, 728 (7th Cir. 2014) (quoting *Iqbal*, 556 U.S. at 678).

Defender is incorrect in contending that it was procedurally precluded from providing any facts at the pleading stage to allege that the recordings were communicated to third parties. Defender's complaint did not plausibly allege *why* the Policy provided coverage under the circumstances Defender faced. Nor did it detail *why* First Mercury's refusal to defend constituted a breach of its duty to defend. The complaint merely stated that such a duty existed, and that "[t]he grounds set forth by FMIC for denying coverage are unfounded, groundless, and made in bad faith in an effort to delay and deny making payment under the policy." But "allegations in the form of legal conclusions are insufficient" to survive dismissal, and by that standard Defender's complaint was already on weak ground. *McReynolds*, 694 F.3d at 885.

Defender could have alleged facts supporting its argument that the policy provided it coverage (even under First Mercury's narrower definition of "publication"), and therefore imposed a duty to defend on First Mercury. That would have required some allegation about publication (i.e., to a third party) of the recordings at issue. We agree with Defender that it was not required to attach affidavits in support of its factual allegations. But if it needed to establish certain

facts as grounds for relief, it should have alleged those facts in its complaint or at least asserted them in opposing dismissal in the district court. After all, nothing prevents a plaintiff opposing dismissal from elaborating on the complaint or even attaching materials to an opposition brief illustrating the facts the plaintiff expects to be able to prove. *See Runnion v. Girl Scouts of Greater Chi. and Nw. Ind.*, 786 F.3d 510, 528 n.8 (7th Cir. 2015) (citing *Geinosky v. City of Chicago*, 675 F.3d 743, 745 n.1 (7th Cir. 2012). Of course, Defender did not have to *prove* the facts at the motion to dismiss stage, but it did have to *plead* them or at least bring them to the district court's attention in opposing the motion to dismiss.

As we have already concluded, "a plaintiff must provide only enough detail to give the defendant fair notice of what the claim is and the grounds upon which it rests, and, through his allegations, show that it is plausible, rather than merely speculative, that he is entitled to relief." *Reger Dev., LLC v. Nat'l City Bank*, 592 F.3d 759, 763–64 (7th Cir. 2010) (internal quotes omitted) (citing *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081, 1083 (7th Cir. 2008)), *as amended* (Dec. 16, 2010). If, to establish coverage under the Policy, Defender eventually needed to prove that publication occurred, it should have pled sufficient facts to make that showing, or elaborated in its opposition brief on the facts it intended to prove. But Defender did neither.

Defender's argument here is in essence an attempt to "argue in the alternative" on appeal without having presented the alternative argument below. In the district court, Defender put all of its eggs in the "publication-means-recording" basket. It did not raise the alternative argument that even if First Mercury's narrower definition of "publica-

tion" prevailed, Defender satisfied the narrower definition because it communicated the recordings to third parties. Defender could have alleged that fact in its pleadings—after all, if Defender did communicate the recordings to others, then it knew or should have known that fact. But Defender did not allege it. Nor did it make the argument in its opposition to the motion to dismiss, or move to amend the complaint. The district court committed no error by not considering an argument Defender never made, based on facts it did not allege.

### III. CONCLUSION

For the foregoing reasons, we AFFIRM the district court's grant of First Mercury's motion to dismiss the Defender complaint.