In the

# United States Court of Appeals

## For the Seventh Circuit

No. 14-2344

LARRY HOOPER, M.D.,

*Plaintiff-Appellant,*

*v.*

PROCTOR HEALTH CARE INC.,

*Defendant-Appellee.*

Appeal from the United States District Court for the
Central District of Illinois, Peoria Division.
No. 12 C 1005 — **James E. Shadid**, *Chief Judge*.

ARGUED MAY 18, 2015 — DECIDED OCTOBER 26, 2015

Before KANNE and SYKES, *Circuit Judges*, and ELLIS, *District Judge.*[*]

ELLIS, *District Judge*. Proctor Health Care, Inc. ("Proctor") terminated Larry Hooper, M.D. in response to Hooper's non-action after he was cleared by a psychiatrist to return to

---

*The Honorable Sara L. Ellis, of the United States District Court for the Northern District of Illinois, sitting by designation.

work, repeatedly told that the psychiatrist had cleared him, and warned that if he did not contact Proctor by a certain date regarding his return to work, he would be fired. Hooper sued Proctor under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, and the district court granted summary judgment to Proctor, finding that Hooper had not asserted a failure to accommodate claim in his complaint and that there was no genuine issue of fact on his disability discrimination claim. Hooper appeals, arguing that the district court should have considered his failure to accommodate claim on the merits and that it ignored disputed facts in the evidence on his discrimination claim. But Hooper's complaint failed to mention any facts to put Proctor on notice that he was pursuing a failure to accommodate claim, which fails even when considered on the merits because Hooper did not require accommodations. Additionally, the district court properly granted summary judgment on the disability discrimination claim regardless of the method under which the claim is examined, because Hooper failed to create an issue of fact that would raise an inference of disability discrimination. Accordingly, we affirm.

## I. BACKGROUND

Because this is an appeal of the district court's summary judgment decision, we summarize the facts in the light most favorable to Hooper, who was the non-moving party, and draw all reasonable inferences in his favor. *Malin v. Hospira, Inc.*, 762 F.3d 552, 554 (7th Cir. 2014).

Hooper, a family practice physician, received a diagnosis of bipolar disorder in 2000. He must regularly see a psychologist to maintain his medical license in Illinois. In 2009, Proctor hired Hooper to work in its First Care outpatient

clinics in Peoria, which provide urgent and primary care to walk-in patients and those with appointments.

On April 16, 2010, Hooper arranged to meet with Mandy Carballido, Proctor's Director of Human Resources. The meeting was prompted by an incident Hooper had with a neighbor about where he had parked his car, during which Hooper made derogatory comments and yelled at the police. Because he did not want a similar incident to occur at work, Hooper thought he needed time off from work. In the meeting, Hooper revealed his bipolar disorder for the first time to anyone at Proctor. According to Hooper, Carballido remarked in response that she had a contentious relationship with her bipolar mother-in-law. Hooper inquired about Proctor's long term disability benefit, and the two discussed the possibility of a medical leave of absence.

After meeting with Hooper, Carballido informed her supervisor, Linda Buck, Proctor's Vice President of Human Resources, of the conversation. Carballido and Buck decided to place Hooper on an immediate paid medical leave of absence and to help him apply for long term disability benefits. Carballido immediately told Hooper of the decision. Hooper determined he was not eligible for long term disability, however, because his condition was a preexisting one.

On April 20, 2010, Hooper met with his psychiatrist, Dr. Karen Kyle. She agreed that Hooper should be placed on leave and wrote him a note to be off work for medical reasons. On May 14, 2010, Dr. Kyle determined that Hooper could return to work and wrote him another note to that end. But Proctor determined that Hooper should continue on paid leave until an independent medical examination confirmed Hooper was fit to return to work. Dr. James

Cavanaugh, a psychiatrist at Rush University Medical Center, conducted that examination on August 2 and 3, 2010. Hooper left the examination believing he would not be able to return to work until Proctor received Dr. Cavanaugh's report, which Hooper thought would take three or four weeks. But on August 4, Dr. Cavanaugh orally informed Carballido that Hooper could return to work, indicating that a written report would be issued by August 19. Dr. Cavanaugh completed his report on August 18. Although Dr. Cavanaugh found Hooper fit to return to work without any specific restrictions, he also suggested Proctor could make certain accommodations to decrease Hooper's stress level and potentially improve Hooper's performance in the workplace. These included modifying Hooper's work hours to include more regular weekday hours so that Hooper did not feel as isolated, allowing Hooper to establish continuous contact with patients instead of only assigning him to walk-in patients, establishing regular evaluation sessions to provide Hooper with feedback on his performance, allowing Hooper to take sick days as medically indicated in a way that did not make him feel ostracized, and ensuring that Hooper had a supportive supervisor.

Upon receiving Dr. Cavanaugh's oral report that Hooper was fit to return to work, Diane Kurtz, Proctor First Care's administrative assistant, left Hooper two messages on August 4 or 5 indicating he should return to work the following day. Kurtz left him an additional message and tried to leave a fourth message but Hooper's voicemail box was full by that time. Proctor also tried contacting Hooper by phone the week of August 9. Hooper did not respond or report for work despite being in the Peoria area from August 4 through 13. Hooper's mother died on August 12, and so Hooper

traveled to Marquette, Michigan on August 13 to attend the funeral and to her affairs, remaining there until August 18. Hooper testified that he thought he left a message that his mother had passed away and he was out of town attending the funeral with Kurtz or Todd Baker, Proctor's Executive Director of Ambulatory Care Services, but he acknowledged that he was not sure whether that call actually occurred. Hooper did not introduce any concrete evidence to substantiate this call.

On August 16, Baker sent Hooper a letter stating that Hooper had been cleared for work as of August 5, that human resources had been contacting him since then but had not heard from him, and that his employment would be terminated if he did not contact Proctor by the close of business on Friday, August 20. Because Proctor had not heard from Hooper by August 20, Proctor terminated Hooper's employment on August 23, effective August 20, and sent him a termination notice to that effect.

Despite having returned to Peoria on August 18, Hooper only retrieved Baker's August 16 letter on August 24. He then tried to contact Baker and Kurtz. Kurtz passed Hooper's message on to Proctor's Human Resources Department. On October 7, 2010, Hooper filed a request that his termination be reviewed. But that request was denied on October 12 because it was not made within seven days of his termination, as required by Proctor policy.

After filing an administrative charge alleging disability discrimination and retaliation, Hooper filed suit against Proctor in the Central District of Illinois. In his complaint, Hooper claimed that the August 16, 2010 letter was pretext to terminate his employment because he was a qualified in-

dividual with a disability under 42 U.S.C. § 12111(8) and the Illinois Human Rights Act ("IHRA"), 775 Ill. Comp. Stat. 5/1-102. The district court granted summary judgment for Proctor, finding that Hooper's disability discrimination claim failed, that his IHRA claim was waived, and that he had not asserted a failure to accommodate claim in his complaint. Hooper does not challenge the decision with respect to the IHRA claim.

## II. ANALYSIS

We review a district court's grant of summary judgment *de novo*. *Taylor-Novotny v. Health All. Med. Plans, Inc.*, 772 F.3d 478, 488 (7th Cir. 2014). Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a).

### A. Failure to Accommodate Claim

In his complaint, Hooper generally alleged disability discrimination under the ADA. Then, in response to Proctor's motion for summary judgment, Hooper argued that Proctor failed to reasonably accommodate his disability, citing 42 U.S.C. § 12112(b)(5)(A). He claimed that Proctor should have discussed with him Dr. Cavanaugh's suggestions of accommodations that would improve Hooper's work environment rather than terminating him. The district court found that Hooper had not raised a failure to accommodate claim in his complaint, having failed to cite to 42 U.S.C. § 12112(b)(5) or allege any facts that would give rise to such a claim. The court further stated that even if Proctor was required to make the accommodations recommended by Dr. Cavanaugh, Proctor could not because Hooper never report-

ed to work after those recommendations were made. Thus, regardless of whether Hooper waived the claim, the court would have found for Proctor.

On appeal, Hooper argues that the district court erred in finding the claim waived. He contends that the complaint alleged that he was a qualified individual with a disability and therefore included a failure to accommodate claim because the definition of a qualified individual is one who, "with or without *reasonable accommodation*, can perform the essential functions of the employment position that such individual holds." 42 U.S.C. § 12111(8) (emphasis added).

Although Hooper need not have pleaded legal theories in his complaint, he was required to plead sufficient facts to put Proctor on notice of his claim. *Reeves ex rel. Reeves v. Jewel Food Stores, Inc.*, 759 F.3d 698, 701 (7th Cir. 2014); *Hatmaker v. Mem'l Med. Ctr.*, 619 F.3d 741, 743 (7th Cir. 2010). Hooper generally pleaded a claim for ADA discrimination. Failure to accommodate is a form of ADA discrimination. 42 U.S.C. § 12112(b)(5)(A); *Reeves*, 759 F.3d at 701. But nowhere in Hooper's complaint are there facts to put Proctor on notice that Hooper was alleging failure to accommodate. *Cf. Reeves*, 759 F.3d at 701 (finding failure to accommodate claim was not waived where plaintiff included facts in his complaint that were relevant to a failure to accommodate claim). Hooper's complaint does not mention Dr. Cavanaugh's suggested accommodations or any other purported need or request for accommodations. Without such allegations, Hooper's mere invocation of ADA discrimination and the inclusion of the word "accommodation" in the cited definition of qualified individual did not provide Proctor with adequate notice. *See Def. Sec. Co. v. First Mercury Ins. Co.*,—F.3d—, 2015

WL 5692516, at *6–7 (7th Cir. 2015) (noting that if plaintiff "eventually needed to prove that publication occurred, it should have pled sufficient facts to make that showing" in the complaint); *Stanard v. Nygren*, 658 F.3d 792, 797 (7th Cir. 2011) (Rules 8 and 10 are intended "to give defendants fair notice of the claims against them and the grounds supporting the claims").

But even a properly preserved failure to accommodate claim would fail under the circumstances here. To establish failure to accommodate, Hooper had to present evidence that (1) he is a qualified individual with a disability, (2) Proctor was aware of his disability, and (3) Proctor failed to reasonably accommodate his disability. *Reeves*, 759 F.3d at 701. Although a "qualified individual" is an individual who "with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires," 42 U.S.C. § 12111(8), only those individuals with "physical or mental limitations" who are "otherwise qualified" for the job at issue are entitled to reasonable accommodations. 42 U.S.C. § 12112(b)(5)(A); *Brumfield v. City of Chicago*, 735 F.3d 619, 631–32 (7th Cir. 2013). A plaintiff cannot state a failure to accommodate claim if "she was able to perform all essential functions of her job without regard to her physical or mental limitations." *Brumfield*, 735 F.3d at 632. Thus, "an employer's accommodation duty is triggered only in situations where an individual who is qualified on paper requires an accommodation in order to be able to perform the essential functions of the job." *Id.*

Here, Dr. Cavanaugh cleared Hooper to return to work without accommodations. *See* R330 ("Dr. Hooper is fit to return to full-time practice without any specific medical or

psychiatric restrictions."). Dr. Cavanaugh did recommend certain accommodations that he thought could "result in Dr. Hooper's experiencing less stress in the workplace and an even improved level of medical practice." *Id.* But these recommendations cannot form the basis of a failure to accommodate claim because Dr. Cavanaugh specifically found that Hooper was qualified for his position *without* accommodations. *See Brumfield*, 735 F.3d at 633 ("A disabled employee who is capable of performing the essential functions of a job in spite of her physical or mental limitations is qualified for the job, and the ADA prevents the employer from discriminating against her on the basis of her irrelevant disability. But since the employee's limitations do not affect her ability to perform those essential functions, the employer's duty to accommodate is not implicated."). Hooper's failure to accommodate claim thus would fail if considered on the merits.[1]

**B. ADA Discrimination Claim**

Under the ADA, Proctor was prohibited from discriminating against Hooper "on the basis of disability." 42 U.S.C. § 12112(a). Hooper could proceed under either the direct or indirect method of proof to establish his claim. *Taylor-Novotny*, 772 F.3d at 489. Under the direct method, he must show that (1) he is disabled within the meaning of the ADA,

---

[1] Although the district court did not consider this alternative ground, on appeal we can address any ground that was preserved and is supported by the record. *See Hester v. Ind. State Dep't of Health*, 726 F.3d 942, 946 (7th Cir. 2013). Proctor properly raised this argument in its reply brief below, after Hooper argued for the first time in response to Proctor's summary judgment motion that Proctor had failed to accommodate his bipolar disorder.

(2) he was qualified to perform the essential functions of the job with or without accommodation, and (3) he was terminated because of his disability. *Bunn v. Khoury Enters., Inc.*, 753 F.3d 676, 683 (7th Cir. 2014). To establish the third prong, Hooper must show that his disability was a "but for" cause of his termination, *Serwatka v. Rockwell Automation, Inc.*, 591 F.3d 957, 961–62 (7th Cir. 2010),[2] which can be demonstrated through direct or circumstantial evidence, with circumstantial evidence encompassing, among other things, suspicious timing and pretext for the adverse employment action. *Bunn*, 753 F.3d at 684. Under the indirect method, Hooper must first establish that (1) he is disabled within the meaning of the ADA, (2) he was meeting Proctor's legitimate expectations, (3) he suffered an adverse employment action, and (4) Proctor treated similarly situated, non-disabled employees more favorably. *Id.* at 685. If Hooper establishes a *prima facie* case, Proctor must present evidence showing a legitimate, nondiscriminatory reason for the employment action. *Id.* Hooper must then present evidence showing that Proctor's stated reason is pretextual. *Id.*

Although we have recently questioned the continued utility of the direct and indirect methods of proof in analyzing discrimination claims, we have continued to separately consider them when reviewing the grant of summary judg-

---

[2] We have not yet addressed whether the 2008 amendments to the ADA, which changed the statutory language from prohibiting discrimination "because of" a disability to prohibiting discrimination "on the basis of" a disability, affects the standard required to prove causation. *See Silk v. Bd. of Trs., Moraine Valley Cmty. Coll., Dist. No. 524*, 795 F.3d 698, 705–06 (7th Cir. 2015). The question has not been presented in this case, the answer would not affect the outcome, and so we decline to resolve the issue here.

ment. *See Simpson v. Beaver Dam Cmty. Hosps., Inc.*, 780 F.3d 784, 789–90 (7th Cir. 2015). Nonetheless, the ultimate question under both methods, and that which is relevant here, is "whether a reasonable jury could find prohibited discrimination." *Bass v. Joliet Pub. Sch. Dist. No. 86*, 746 F.3d 835, 840 (7th Cir. 2014).

Indeed, Hooper's arguments do not neatly fit into either the direct or indirect method here or before the district court. Although he set forth the legal standard for each method in his brief below, he never specified under which method he was proceeding and instead generally argued that Proctor sought a reason to fire him as soon as it learned of his bipolar disorder. The district court analyzed his claim under the indirect method only. On appeal, Hooper does not directly address why the district court's decision in granting summary judgment based on his failure to meet the indirect method of proof was wrong. Regardless of how Hooper's claim is analyzed, however, he has not established that a reasonable juror could find that Proctor discriminated against him on the basis of his disability.

Under the indirect method, Hooper presented no evidence of similarly situated individuals. Indeed, he does not even mention this element of the *prima facie* case on appeal. Lack of evidence on this element is sufficient to end the inquiry under the indirect method, as it is Hooper's responsibility to identify and present evidence of a comparator at the summary judgment stage. *Bunn*, 753 F.3d at 685; *Chaib v. Indiana*, 744 F.3d 974, 984 (7th Cir. 2014). But going further, there is no issue of fact as to pretext. Proctor claims that Hooper was terminated for not meeting legitimate job expectations because he did not return to work as instructed in

August 2010. While Hooper attempts to create a dispute as to when he was cleared to return to work, Hooper's subjective understanding that he could not return to work until Dr. Cavanaugh completed his written report is immaterial. The record reflects that Dr. Cavanaugh informed Carballido that Hooper could return to work on August 4, that Proctor decided to recall Hooper to work that day, and that Proctor repeatedly told Hooper to return to work beginning on August 4 or 5 even though the written report was not yet completed. Hooper ignored his employer's directions at his own peril, as the relevant question here is the employer's—not the employee's—honest belief. *See Hill v. Tangherlini*, 724 F.3d 965, 968 (7th Cir. 2013) ("An inquiry into pretext requires that we evaluate the honesty of the employer's explanation, rather than its validity or reasonableness[.]").

Proctor undertook numerous efforts to notify Hooper that he was cleared to return to work and, ultimately when it did not hear from him, told him by letter that if he did not contact Proctor by a certain date, it would terminate his employment. Hooper has not presented any evidence to undermine the fact that Proctor believed that Hooper could return to work on August 4 and that Hooper's failure to return to work or contact Proctor as directed justified termination. *See Lindemann v. Mobil Oil Corp.*, 141 F.3d 290, 296 (7th Cir. 1998) (absenteeism is legitimate reason to terminate employee); *Rush v. McDonald's Corp.*, 966 F.2d 1104, 1115 (7th Cir. 1992) (employer has legitimate interest in employee's attendance and reliability). Although Hooper asks us to speculate about the reasons for Proctor's actions, we do not sit as a "super personnel department" with the ability to do so. *Millbrook v. IBP, Inc.*, 280 F.3d 1169, 1181 (7th Cir. 2002) (citation omitted); *see also Widmar v. Sun Chem. Corp.*, 772 F.3d

457, 465 (7th Cir. 2014) (employee failed to show pretext where he only offered speculation instead of identifying inconsistencies in employer's reasons for termination). With only Hooper's speculation, we cannot find sufficient evidence to create a question of fact as to whether Proctor's proffered reason for Hooper's termination was pretextual.

Alternatively, to the extent Hooper's claim could be considered under the direct method, it fails under that analysis as well. Hooper argues that Proctor was biased against him because of his bipolar disorder, as evidenced by Carballido's remark in April 2010 that she had a contentious relationship with her bipolar mother-in-law and the fact that his personnel file grew after he met with Carballido. He argues that this bias caused Proctor to seek a reason to discharge him in August 2010 and make Proctor unwilling to work with him when he inquired about his work status on August 24.

But Carballido's comment was a stray remark and is insufficient to support a discrimination claim. *See Fleishman v. Cont'l Cas. Co.*, 698 F.3d 598, 605 (7th Cir. 2012) ("[I]solated comments are not probative of discrimination unless they are 'contemporaneous with the discharge or causally related to the discharge decision-making process.'" (quoting *Gleason v. Mesirow Fin., Inc.*, 118 F.3d 1134, 1140 (7th Cir. 1997))). The comment was made four months before the termination decision, and Hooper has not pointed to a causal connection between it and his termination. *See Markel v. Bd. of Regents of Univ. of Wis. Sys.*, 276 F.3d 906, 910 (7th Cir. 2002) (comments made two months before termination decision were not contemporaneous to adverse action). The fact that Hooper's personnel file may have increased in size after he disclosed his bipolar disorder, which coincides with the decision to place

him on paid medical leave and the paperwork that would have accompanied that action, does little, as Hooper has not provided us with any information about the actual contents of the file. Any inferences Hooper asks us to draw based on the size of his personnel file are based on speculation and thus insufficient to withstand summary judgment. *See Herzog v. Graphic Packaging Int'l, Inc.*, 742 F.3d 802, 806 (7th Cir. 2014) ("[I]nferences that are supported by only speculation or conjecture will not defeat a summary judgment motion." (citation omitted)). And as already discussed, Hooper has no evidence of pretext.

Further, Hooper has failed to show any type of connection between any alleged discriminatory animus by Proctor and the termination decision. *See Good v. Univ. of Chicago Med. Ctr.*, 673 F.3d 670, 676 (7th Cir. 2012) (the direct method of proof "requires evidence leading *directly* to the conclusion that an employer was illegally motivated, without reliance on speculation"). If anything, the evidence shows that Proctor acted quickly to bring Hooper back to work once it learned his bipolar disorder did not pose any harm to Hooper, Proctor staff, or patients, and only terminated him when he failed to return to work after numerous efforts to contact him. This does not suggest discriminatory motive.

Ultimately, because no reasonable juror could find prohibited discrimination under any circumstances in the record, we conclude that the district court properly granted summary judgment for Proctor on Hooper's ADA discrimination claim.

## III. CONCLUSION

For the foregoing reasons, the judgment of the district court is AFFIRMED.