**NONPRECEDENTIAL DISPOSITION**

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted October 27, 2016[*]
Decided October 28, 2016

**Before**

RICHARD A. POSNER, *Circuit Judge*

JOEL M. FLAUM, *Circuit Judge*

KENNETH F. RIPPLE, *Circuit Judge*

No. 15-2606

| | |
|---|---|
| DERRICK HARRISON, | Appeal from the United States District |
| *Plaintiff-Appellant,* | Court for the Northern District of Illinois, Eastern Division. |
| *v.* | |
| | No. 13 C 3256 |
| WEXFORD HEALTH SOURCES, INC., et al., | |
| *Defendants-Appellees.* | Thomas M. Durkin, *Judge.* |

**O R D E R**

Derrick Harrison, an Illinois inmate, sued two prison employees, Wexford Health Sources, and the prison's medical director for deliberate indifference in treating his back injury after he fell while trying to close several high windows. The district court granted the defendants' motions for summary judgment. We affirm.

---

[*] We have unanimously agreed to decide the case without oral argument because the briefs and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. FED. R. APP. P. 34(a)(2)(C).

Unless otherwise noted the following facts are undisputed and presented in the light most favorable to Harrison, the party opposing summary judgment. *See Hooper v. Proctor Health Care Inc.*, 804 F.3d 846, 849 (7th Cir. 2015). On a chilly November day at Statesville Correctional Center, Harrison, who was performing janitorial work, was directed by a prison officer to close a series of windows eight feet off of the ground. After climbing a "bullpen cage" to reach the windows, Harrison slipped and fell onto a plastic food cart, injuring his back and neck. Harrison said that his back and neck felt stiff and in pain and that it was difficult for him to move. Sergeant Troy Mayes had been walking with Jennifer Encarnacion, a nurse, on her rounds distributing medication to prisoners in their cells, and she instructed Mayes to call the prison's Health Care Unit, which scheduled Harrison an appointment for the following day.

At his appointment Harrison received prescriptions for anti-inflammatory, muscle relaxing, and pain-relieving medications. Two days later Harrison underwent x-rays of his cervical and lumbar spines. Harrison was referred to Dr. Saleh Obaisi, Statesville's medical director and a Wexford employee, who told Harrison that the x-rays were negative and injected an anti-inflammatory drug into Harrison's pelvis as well as a pain reliever into one of his hands. Dr. Obaisi also gave Harrison a two-week no-activity permit. Dr. Obaisi saw Harrison five more times over the ensuing three months and ordered additional prescriptions for muscle relaxers and pain relievers. Harrison reported that his back pain gradually lessened.

But some pain lingered, so four months after the accident, Dr. Obaisi referred Harrison to a neurosurgeon at the University of Illinois Medical Center. An MRI was taken of Harrison's lower back, and it showed some degeneration of his lumbar spine. Over the next year and a half, Harrison visited Dr. Obaisi and other Wexford doctors almost every month. After Harrison complained that his back pain had worsened, he received a second MRI, new prescriptions, and physical therapy.

Harrison brought this suit under 42 U.S.C. § 1983 arguing that the prison defendants gave him improper medical care in violation of the Eighth Amendment. Harrison asserted that Dr. Obaisi acted with deliberate indifference by not prescribing a particular antidepressant drug that, Harrison said, helped him sleep; Harrison also claimed that Dr. Obaisi delayed ordering him an MRI for five months and delayed letting him see a specialist for 17 months. Harrison added that Wexford had a written policy to provide prisoners with a bare minimum of medical care in violation of the Eighth Amendment. As a final matter, Harrison contended that Mayes and Encarnacion

acted with deliberate indifference to his injury and pain by not providing immediate medical care after his fall.[1]

Throughout the proceedings, Harrison also made seven requests for recruited counsel, none of which the court granted. In his first, second, fourth, and sixth requests, Harrison argued he lacked the medical knowledge to challenge his diagnosis or the legal sophistication to show that his treatment was inadequate. In his first, second, fifth, and seventh requests, Harrison asserted that imprisonment constraints prevented him from obtaining sufficient access to relevant legal authorities and discovery materials. And in his third and sixth requests for counsel, Harrison noted that a jailhouse lawyer who had helped him litigate his case could no longer offer assistance.

The district court ultimately granted summary judgment for the defendants. The court concluded that although Harrison had an objectively serious medical condition, the defendants had not acted with deliberate indifference. Dr. Obaisi, the court determined, had been "responsive" to Harrison's complaints, repeatedly giving him physical examinations, prescribing pain relievers and muscle relaxers, and ordering diagnostic examinations, including two MRIs and a referral to specialists at UIC. As for Wexford, the court found that it had "consistently" given Harrison access to Stateville medical professionals and outside specialists. With regard to Mayes, a nonmedical professional, the court decided that he justifiably relied on the Health Care Unit's medical judgment that Harrison could receive treatment the day after his fall. As for Nurse Encarnacion, the court determined that Harrison's condition did not present a medical emergency requiring immediate care from her, and she was not responsible for the Health Care Unit's delay in providing Harrison treatment.

On appeal Harrison asserts that Dr. Obaisi acted with deliberate indifference by waiting 17 months to refer him to a specialist and by prescribing medication that the doctor knew would not be effective. But as the district court explained, Harrison has not pointed to any evidence in the record reflecting that the treatment was "blatantly inappropriate" or otherwise violated professional medical standards. *Pyles v. Fahim*, 771 F.3d 403, 409 (7th Cir. 2014) (internal citation and quotation marks omitted). During these 17 months, Dr. Obaisi regularly altered Harrison's prescriptions for pain-relieving, anti-inflammatory, and muscle-relaxing drugs based on Harrison's condition. Dr. Obaisi also ordered and reviewed Harrison's MRI to ensure that he properly diagnosed his

---

[1] Harrison did not raise his retaliation claim against Mayes on appeal, and we therefore do not consider it.

injury. Because the record does not contain evidence showing that Dr. Obaisi's care violated professional medical standards, the district court properly granted Dr. Obaisi summary judgment.

Harrison reiterates that Wexford violated its own policy of having a doctor onsite and impermissibly delayed in providing him initial treatment after his fall. He contends that Wexford should have given him pain-relieving medication shortly after his injury instead of making him cope with significant pain until his appointment. "A delay in treatment may constitute deliberate indifference if the delay exacerbated the injury or unnecessarily prolonged an inmate's pain." *McGowan v. Hulick*, 612 F.3d 636, 640 (7th Cir. 2010).

We agree with the district court that the record does not contain evidence from which a jury reasonably could conclude that Harrison's fall created a medical emergency requiring immediate treatment. Because Harrison "has not established a constitutional problem with his treatment and thus did not suffer actionable injury from the policy he attributes to the corporation," *Ray v. Wexford Health Sources, Inc.*, 706 F.3d 864, 866 (7th Cir. 2013), we need not consider whether Wexford violated its alleged policy.

Harrison also contends that Mayes, upon learning that the Health Care Unit would not treat him until the next day, acted with deliberate indifference by not instructing Encarnacion to provide him with immediate medical care. But as Mayes explained in his affidavit, he could not order Encarnacion to care for Harrison because Mayes lacked the authority to give this directive. Harrison apparently expects that Mayes should have second-guessed the Health Care Unit's determination that Harrison did not require immediate medical attention. But Harrison has pointed to no evidence showing that Mayes had a culpable state of mind or recklessly disregarded his pain when Mayes deferred to this unit's decision that Harrison be treated the next day. *See Knight v. Wiseman*, 590 F.3d 458, 465 (7th Cir. 2009). The district court therefore correctly granted Mayes summary judgment.

Harrison finally asserts that Encarnacion violated the Eighth Amendment by not stabilizing his condition soon after his fall even though the Health Care Unit determined that he could wait to receive treatment. Harrison imputes to Encarnacion responsibility for his care that she did not have. Given the lack of evidence that Harrison's injury created a medical emergency, Harrison cannot create a fact question that Encarnacion violated professional medical standards when she referred his case to the Health Care Unit. Further, because Encarnacion was not responsible for the Health Care Unit's delay

in treating Harrison, he also cannot raise a fact question over her treatment of his injuries and pain.

Harrison also argues that the district court should not have denied his requests for recruited counsel because, he asserts, he lacked the expertise and sophistication to evaluate Wexford's medical diagnosis of his condition. With regard to the denial of Harrison's second motion for recruited counsel, the district court should have assessed Harrison's competency to litigate his claims given their complexity. S*ee Olson v. Morgan*, 750 F.3d 708, 712 (7th Cir. 2014). But we have no reason to conclude that recruited counsel would have affected this case's outcome. *See Tidwell v. Hicks*, 791 F.3d 704, 709 (7th Cir. 2015). We therefore uphold the district court's decisions to deny Harrison's motions for recruited counsel.

AFFIRMED.