NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted September 15, 2021[*]
Decided September 21, 2021

**Before**

DAVID F. HAMILTON, *Circuit Judge*

MICHAEL Y. SCUDDER, *Circuit Judge*

THOMAS L. KIRSCH II, *Circuit Judge*

No. 20-2968

| | |
|---|---|
| TIMOTHY L. YOUNGBLOOD, *Plaintiff-Appellant*, | Appeal from the United States District Court for the Southern District of Illinois. |
| *v.* | No. 3:17-cv-00807-MAB |
| JOHN TROST, et al., *Defendants-Appellees*. | **Mark A. Beatty**, *Magistrate Judge*. |

## O R D E R

Timothy Youngblood, an Illinois inmate who received surgeries for two hernias, sued prison officials and Wexford Health Sources, Inc., a prison contractor, accusing them of violating his rights under the Eighth Amendment by not providing the surgeries sooner. See 42 U.S.C. § 1983. The district court entered summary judgment for

---

[*] We have agreed to decide this case without oral argument because the briefs and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. FED. R. APP. P. 34(a)(2)(C).

the defendants. It correctly reasoned that no evidence suggested that, in timing the surgeries, any official ignored a serious risk of harm from Youngblood's hernias or that Wexford had a policy or practice that wrongfully harmed him. We therefore affirm.

Youngblood was first diagnosed in 2013 with a hernia in his right groin area. Over the next three years, he complained to prison nurses and doctors (none of whom is a defendant) that the hernia was painful, led to fever and chills, and warranted surgery. To help, in early 2014 doctors gave him a hernia belt to relieve discomfort by keeping the protruding tissue in place, and in mid-2014 they prescribed him pain medication, which he refused. When Youngblood complained again about hernia pain in 2016, the doctors prescribed him various pain relievers, many of which he still refused, and laxatives to prevent straining around the hernia. In declining to authorize surgery, they wrote in Youngblood's medical records that he was in no apparent distress; that he often refused medication and failed to use his hernia belt; that the hernia was soft and small; that it did not affect his daily activities or require him to use a cane; and that it was "reducible," meaning that it could be pushed behind the muscle wall from where it protruded.

The hernia in Youngblood's right groin area grew, and in early 2017 while he was at Menard Correctional Center, it was repaired by surgery. According to his records from October and November 2016, the hernia at that time caused "stabbing" pain and appeared "large, … firm, [and] non-reducible," meaning that it was stuck outside the muscle wall. After a doctor at Menard (employed by Wexford) immediately recommended surgery, its medical director (also a Wexford employee) had Youngblood see an outside surgeon. That surgeon found in January 2017 that the right-groin hernia, though still "partially reducible," warranted surgery. He also noted a "little bulge" in the left groin but opined that this developing hernia had no symptoms, was not "obvious" or "definite," and did not require surgery. Based on this advice, Menard's medical director approved surgery for Youngblood's right hernia. The surgery was performed in April 2017.

Meanwhile, Youngblood filed a grievance in May 2016 complaining that he needed surgery to repair the hernia on his left side. The grievance was denied, and he appealed to the Administrative Review Board of the Illinois Department of Corrections. A member of that Board asked Menard's medical unit in January 2017 about Youngblood's hernia and learned that surgery on the hernia was scheduled. (The surgery was scheduled for Youngblood's *right* hernia, but the medical unit did not

make that distinction.) The Board member then recommended denying the appeal as moot, and an administrator at the Department of Corrections did so.

Shortly after, Youngblood was transferred to a different prison where he continued seeking surgery for his left hernia. In September 2017, a doctor there suggested surgery, but medical staff ultimately decided against it because Youngblood's left hernia was "reducible and does not meet the criteria." About a year later, in July 2018, another doctor at the prison recommended surgery on the hernia, which at that time was still "small" and "reducible" but now painful. As a result, Youngblood was approved the following month to see an outside surgeon, who in September recommended surgery for the painful hernia, which by then had also become large and non-reducible. The surgery was scheduled immediately and performed a few weeks later in October 2018.

This lawsuit followed. Youngblood sued Menard's medical director and the Department's grievance administrator, asserting that they violated his Eighth Amendment rights by ignoring or being deliberately indifferent to his need for surgery in his left groin. He also sued Wexford, accusing it of forcing its doctors to oppose surgery on any reducible hernia, regardless of pain. Finally, he sued the warden of Menard for injunctive relief. The district court, through a magistrate judge presiding with the consent of the parties, entered summary judgment for the defendants. It ruled that no reasonable jury could find that the medical director, who followed the outside surgeon's opinion about right-groin-only surgery, ignored a serious need regarding Youngblood's hernias. Nor could a jury conclude that the administrator who denied the appealed grievance in reliance on input from the medical unit had deliberately disregarded Youngblood's left hernia. Wexford, too, could not be liable because Youngblood furnished no evidence that Wexford forbids surgeries of painful, reducible hernias. Consequently, no injunction against the warden was warranted.

On appeal, Youngblood principally challenges the entry of summary judgment for Wexford. He maintains that Wexford encourages its doctors to deny or delay surgery to repair reducible, painful hernias in order to save money. That practice, he says, caused constitutionally deficient treatment of his hernias, leading in his view to needless pain, fever, chills, and constipation.

Youngblood's case against Wexford has two fatal problems. First, although a prison's medical contractor could face liability under § 1983 if the summary-judgment record contains evidence of unconstitutional policies or widespread practices, *Glisson v. Indiana Dep't of Corr.*, 849 F.3d 372, 379 (7th Cir. 2017) (en banc) (citing *Monell v. Dep't of*

*Soc. Servs.*, 436 U.S. 658 (1978)), Youngblood furnished no such evidence. In particular, no evidence suggests that Wexford has a policy or practice of denying surgery for all reducible hernias regardless of pain or symptoms. To the contrary, the record shows that the doctors who worked for Wexford *approved* each of Youngblood's hernia surgeries even though the hernias were reducible. His first, right hernia was surgically repaired despite the outside surgeon's description of it as "partially reducible." And surgery was approved for his left hernia once it was painful, even though the Wexford doctor who recommended the surgery described the hernia at that time as "reducible."

Second, even if Wexford had a practice of delaying surgery on reducible hernias despite their pain, "if a given policy causes no harm to the plaintiff there is no possible relief." *Ray v. Wexford Health Sources, Inc.*, 706 F.3d 864, 866 (7th Cir. 2013). That is the case here. No evidence shows that such a policy was the reason that Youngblood did not receive his two surgeries sooner. Rather, the doctors who did not recommend immediate surgery for Youngblood between 2013 and 2016 based their judgment not just on the reducibility of his hernia but on other factors as well. For the right groin, they noted the effectiveness of pain relievers, laxatives, and a hernia belt in alleviating his pain. For the left groin, the hernia produced no symptoms and was not "definite." Moreover, nothing in the record suggests that Youngblood told his doctors that the pain medicine, laxatives, and a pain-relieving belt did not abate his symptoms or that these measures were a reckless alternative to surgery in his case. In fact, the record shows that Youngblood did not comply with these measures, often refusing pain medication and failing to use his hernia belt. Youngblood preferred immediate surgery to these more conservative treatments, but he was not entitled to his preferred care as long as his doctors were exercising their medical judgment. See *Pyles v. Fahim*, 771 F.3d 403, 409 (7th Cir. 2014).

Youngblood also unpersuasively challenges the entry of summary judgment against the individual defendants. Summary judgment was appropriate for the medical director because the director could reasonably rely on the opinion of the outside consultant who said that no surgery on the left hernia was needed. See *Thomas v. Martija*, 991 F.3d 763, 772 (7th Cir. 2021) (affirming summary judgment for doctor who was "not alone in his judgment" about reasonable treatment). Also, no reasonable jury could find liable the administrator who rejected Youngblood's appealed grievance. Non-medical officials generally may defer to the judgment of the medical professionals, *Arnett v. Webster*, 658 F.3d 742, 755 (7th Cir. 2011), and a member of the medical unit assured the administrator that surgery for Youngblood's hernia had been scheduled. True, the scheduled surgery was for his *right* hernia, and the grievance concerned his

*left* hernia, but the administrator was not told this or responsible for that mistake. See *Hayes v. Snyder*, 546 F.3d 516, 527 (7th Cir. 2008). Finally, Youngblood raises no argument about the warden, so summary judgment was proper for him as well.

AFFIRMED.