In the

# United States Court of Appeals

### For the Seventh Circuit

No. 11-3784

JOHN D. ANDERSON,

*Plaintiff-Appellant,*

*v.*

PATRICK R. DONAHOE, Postmaster General
of the United States Postal Service,
Great Lakes Operations,

*Defendant-Appellee.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 09 C 2525—**Matthew F. Kennelly**, *Judge.*

ARGUED SEPTEMBER 18, 2012—DECIDED OCTOBER 26, 2012

Before FLAUM, SYKES, and TINDER, *Circuit Judges.*

FLAUM, *Circuit Judge*. John D. Anderson, a United States
Postal Service ("USPS") worker, suffers from asthma.
While he is virtually symptom-free outside of the work-
place, his asthma regularly flared up at his job as a part-
time mail processor at a postal facility in Bedford Park,
Illinois. Between 2002 and 2009, Anderson filed numerous

Equal Employment Opportunity ("EEO") complaints, an Occupational Health and Safety Administration ("OSHA") complaint, and union grievances relating to his condition, requesting reasonable accommodations. He was absent from work for extended periods of time throughout the 2002-2009 period. Anderson sued his employer, USPS, for alleged violations of the Rehabilitation Act and the Americans with Disability Act ("ADA") for retaliation, disability discrimination, failure to accommodate, and violations of the Family Medical Leave Act ("FMLA"). The district court granted summary judgment in the defendant's favor. For the following reasons, we affirm on all counts.

## I. Background

Anderson was hired as a part-time mail processor by USPS in 1998 and has worked at a facility in Bedford Park, Illinois for the duration of his career. Anderson was diagnosed with Chronic Persistent Bronchial Asthma in 1997. In April 2002, Anderson filed an informal EEO complaint alleging that his requests for time off under the FMLA were denied in retaliation for his having participated in a previous discrimination complaint and on account of his gender and disability. In July 2002, Anderson filed another EEO complaint alleging that his supervisor had retaliated against him for talking to another manager, harassed him, and that he had been discriminated against because of his disability.

Anderson asserts that his asthma symptoms were only noticeable at work, attributing this to his workplace

being damp, and full of mold and mildew. In September 2002, Anderson filed a complaint with OSHA alleging that the amount of mold and mildew at the Bedford Park postal facility was causing him to become ill. OSHA informed USPS of the issue (without revealing that Anderson had filed the complaint) and directed USPS to investigate. USPS hired a contractor to inspect and test the facility, then approved a $32,000 renovation to remove the mold and prevent its return.

On December 3, 2002, Anderson left work early, claiming that the mold removal process was causing his asthma to flare up. On December 23, 2002, Dr. Michael Foggs, Anderson's allergy immunologist, wrote a letter to the USPS injury compensation department explaining that Anderson is sensitive to mold and should not work in an environment where he is exposed to mold, dampness, or noxious chemicals. In a separate document, Dr. Foggs wrote that Anderson could return to work when the cleanup process and renovations were completed.

On January 6, 2003, USPS informed Dr. Foggs that the mold and mildew cleanup had been completed. Dr. Foggs responded that Anderson could return to the workplace if the environment was clean and devoid of mold spores and irritants. USPS told Anderson to report to work immediately. Shortly thereafter, Anderson returned to work. On January 17, 2003, Dr. Foggs wrote another letter stating that Anderson continued to suffer from asthma-related problems at work and that he showed virtually no symptoms at home or in the security office at the workplace. He requested that Ander-

son be assigned to work in the security office or a comparable work environment. That same day, Anderson contacted an EEO counselor to complain of disability discrimination. On January 30, 2003, Anderson filed an informal complaint stating that he was suffering from disability discrimination, had not been accorded his FMLA rights, and had received a removal notice stating that he would be terminated for failing to maintain a regular work schedule. USPS and Anderson settled the complaint in March and Anderson kept his job.

In April 2003 Anderson filed another informal EEO complaint, followed by a formal complaint in June 2003. In both complaints he sought to enforce his FMLA rights. In his informal complaint, he also alleged disability discrimination and retaliation. Throughout 2002 and 2003, Anderson often did not report to work, though the parties dispute how many of these absences were the result of his asthma. In addition to the aforementioned removal notice that Anderson received in January, he received three notices of suspension due to absenteeism in 2003.

In December 2003, Dr. Foggs again wrote to USPS declaring that Anderson had an allergic hypersensitivity to mold spores and asking that Anderson be extricated from any workplace environment that exposed him to mold spores, dampness, or noxious irritants. Anderson contends that he left work to go to the hospital in December 2003 and January 2004; USPS disputes the December visit because the hospital produced no records of it in response to a subpoena.

On July 6, 2004, Anderson received another removal notice. It stated that he would be terminated because he had not reported to work since June 19, 2004. On July 20, 2004, Anderson made an informal EEO complaint alleging that his removal notice was the result of race and disability discrimination and retaliation. On July 21, 2004, USPS received a letter from Dr. Foggs explaining that Anderson had not been able to work since June 18 and that he had suffered multiple life-threatening asthma attacks at work. On July 23, 2004, USPS rescinded and expunged the removal notice from Anderson's disciplinary record. Anderson then made a formal EEO complaint on September 27, 2004, in which he alleged disability, sex, and race discrimination and retaliation. Dr. Foggs again wrote to USPS in December 2004 (approximately six months after Anderson had stopped reporting to work), declaring that Anderson's work environment had repeatedly triggered his asthma attacks. He explained that Anderson's asthma was usually stable outside of his workplace. Dr. Foggs also stated that he had definitively established a causal relationship between the aggravation of Anderson's asthma and his exposure to triggering agents at his workplace.

In May 2005, nearly a year after Anderson stopped reporting to work, Anderson asked for accommodations from USPS, requesting to work in the security office or another environment that his asthma tolerated well. The same day, Dr. Foggs again contacted USPS regarding Anderson's health problems, asserting that his life could be at risk if he returned to work. In August 2005, Anderson wrote a letter to Bedford Park facility senior

manager Michael Lee requesting that he be granted an accommodation and assigned to clerical or office work. Later in August, USPS physician Dr. Elaine Fergesun, a member of the reasonable accommodations committee to which Anderson's request had been referred, informed Dr. Foggs that the mold had been removed and that the facility's air quality was higher than the air outside of the facility. She also requested a description of why Anderson's asthma was life-threatening. Dr. Foggs responded that his records indicated that Anderson had suffered several asthma attacks at work and expressed doubt that the quality of the air in the building was high. He did not provide any records.

In September 2005, Anderson received another notice of removal. It stated that Anderson had not returned to work since June 2004 and that USPS found his medical documentation inadequate. Anderson filed a union grievance, which the parties settled by agreeing that Anderson would be examined by a new physician in November 2005. Dr. Jacek Pieta examined Anderson and determined that Anderson could return to work in an irritant-free environment. Anderson returned to work in February 2006.

When Anderson returned to work, he was placed in the manual letters section, an area that he had allegedly told his supervisors his asthma tolerated better. Lee testified that he observed Anderson working productively there, wearing a dust mask. Anderson disputes this. Anderson received no further information in response to his request for an accommodation.

Lee also testified that he checked to see whether Anderson could be assigned to an office job, but learned that there were no vacant funded office positions at that time (another point which Anderson disputes). Lee and another manager discussed Anderson's request during a telephone conversation with the head of USPS's reasonable accommodation committee, Stephen Grieser. Grieser testified that during the call, he consulted Dr. Fergesun, another member of the committee. They decided to provide an N95 mask to Anderson. Lee followed up with Grieser two to three weeks later, reporting that Anderson was showing up for work wearing the mask and was not having any problems. Grieser did not convene the full committee to consider Anderson's accommodation request. Anderson disputes that he ever received a mask.

From 2006 until the commencement of this lawsuit on April 27, 2009, Anderson was absent from work on many days (the parties dispute how many absences were a result of his asthma). He received several additional removal and suspension notices. Anderson claims that his pay was docked during this period; USPS contends that he was paid for every day that he actually worked. In August 2007, Anderson was promoted to a full-time employee, and he currently works as a mail processing clerk for USPS. In February 2009, USPS issued its final agency decision in Anderson's EEO case, denying his discrimination complaint.

On April 27, 2009, Anderson filed a *pro se* complaint against his employer, USPS, in the Northern District of

Illinois. In his initial complaint, he asserted unlawful discrimination based on race, sex, age, and disability, as well as harassment, retaliation, and failure to accommodate a disability. On September 29, 2010, Anderson (then represented by counsel) filed his first amended complaint, alleging one count of unlawful retaliation discrimination under the ADA and one count of negligence. On October 6, 2010, Anderson filed a second amended complaint alleging a single count of unlawful retaliation discrimination for failure to accommodate a disability under the Rehabilitation Act.

Following discovery, USPS moved for summary judgment, addressing the single claim of retaliation discrimination. In Anderson's response to USPS's motion for summary judgment, for the first time he asserted claims that USPS had interfered with the exercise of his FMLA rights and had retaliated against him for the attempted exercise of his FMLA rights. Anderson further argued that he had a right to amend his complaint to conform to the facts of discovery, though he did not file a motion asking for leave to amend his complaint.

The district court granted USPS's motion for summary judgment. The court determined that there was no evidence from which a reasonable jury could conclude that USPS failed to accommodate his asthma in retaliation for his previous EEO and OSHA complaints and grievances. Further, while Anderson had established that he had engaged in protected activity and did not receive the specific accommodation that he requested, he was unable to establish the required causal relationship between these two events.

The district court next determined that Anderson had forfeited his disability discrimination claim under the Rehabilitation Act, his failure to accommodate claim, and his claims under the FMLA. The district court explained that even if Anderson hadn't forfeited these claims, each would fail on the merits. Accordingly, the court granted USPS's motion for summary judgment. Anderson filed a timely appeal.

## II.  Discussion

We review the district court's grant of summary judgment de novo. *Jackson v. County of Racine*, 474 F.3d 493, 498 (7th Cir. 2007). Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Facts are viewed in the light most favorable to the nonmovants, drawing all reasonable inferences in their favor. *Ault v. Speicher*, 634 F.3d 942, 945 (7th Cir. 2011).

### A.  Retaliation Discrimination

Anderson first argues that USPS retaliated against him for engaging in protected activity, in violation of the Rehabilitation Act of 1973, 29 U.S.C. §§ 701 *et seq*. Specifically, Anderson claims that USPS retaliated against him by failing to provide him with an accommodation and by threatening him with disciplinary action in response

to his having filed EEO complaints.[1] To establish retaliation under the Rehabilitation Act, an employee "must present either direct evidence of discrimination or indirect evidence under the burden-shifting analysis prescribed by *McDonnell Douglas.*" *Mannie v. Potter*, 394 F.3d 977, 983 (7th Cir. 2005) (citing *Kersting v. Wal-Mart Stores, Inc.*, 250 F.3d 1109, 1117 (7th Cir. 2001)). Under the direct method of proof, a plaintiff must present evidence of "(1) a statutorily protected activity; (2) a materially adverse action taken by the employer; and (3) a causal connection between the two." *Caskey v. Colgate-Palmolive Co.*, 535 F.3d 585, 593 (7th Cir. 2008) (citing *Humphries v. CBOCS West, Inc.*, 474 F.3d 387, 404 (7th Cir. 2007)).

Anderson's EEO filings constitute statutorily protected activity, satisfying prong one of his retaliation claim. *See, e.g., Coleman v. Donahoe*, 667 F.3d 835, 859-60 (7th Cir. 2012) ("[F]iling EEO charges . . . qualif[ies] as protected activity."). With respect to materially adverse action under prong two, Anderson may have presented sufficient evidence to demonstrate a genuine issue of material fact regarding USPS's alleged failure to accommodate him and threatened disciplinary action. While USPS argues that it accommodated Anderson by engaging in a costly cleanup process, this action can also

---

[1] In his brief on appeal, Anderson also argues that his OSHA filings constitute protected activity. However, Anderson's second amended complaint alleged only that USPS retaliated against him in response to his having filed EEO complaints (rather than an OSHA complaint). We accordingly focus our analysis on Anderson's EEO complaints.

be interpreted as responsive to OSHA's request that USPS investigate the conditions at the Bedford Park facility, rather than to Anderson's accommodation request. USPS further argues that it accommodated Anderson by transferring him to the manual letters department and providing him with an N95 mask. However, Anderson disputes that his asthma tolerated the manual letters department environment better or that he ever received an N95 mask. Anderson also presented evidence that he received numerous suspension and removal notices from USPS. We have previously recognized that alleging a five-day disciplinary suspension resulting in diminished job prospects and loss of pay is sufficient to survive a summary judgment motion on the issue of adverse employment action. *Russell v. Bd. of Trs. of Univ. of Ill. at Chicago*, 243 F.3d 336, 341 (7th Cir. 2001). Thus, Anderson may have presented sufficient evidence to withstand a summary judgment motion on the issue of materially adverse employment action. However, even assuming that Anderson can establish that USPS took adverse action against him, he has failed to raise a genuine dispute as to causation between said action and his protected activity.

Under the direct method of proof, evidence of a causal relationship between an employee's protected activity and an adverse action may be direct or circumstantial. *Harper v. C.R. England, Inc.*, 687 F.3d 297, 306 (7th Cir. 2012). "Evidence of retaliation is direct when, 'if believed by the trier of fact, [it] will prove the particular fact in question without reliance on inference or presumption.'" *Id.* at 307 (quoting *Pitasi v. Gartner Grp.*,

184 F.3d 709, 714 (7th Cir. 1999)). Because direct evidence "essentially requires an admission by the employer," such evidence is rare. *Id.* (quoting *Benders v. Bellows & Bellows*, 515 F.3d 757, 764 (7th Cir. 2008)); *see also Coleman*, 667 F.3d at 860 (causation may be shown by "direct evidence, which would 'entail something akin to an admission by the employer' ('I'm firing you because you had the nerve to accuse me of sex discrimination!')" (citation omitted)). Anderson has not proffered any evidence of such an admission by USPS.

More often, as is the case here, employees rely upon circumstantial evidence to support their claims, which "'allows the trier of fact to *infer* intentional discrimination by the decision maker,' typically through a longer chain of inferences." *Caskey*, 535 F.3d at 593 (citation omitted and emphasis in original). An employee may demonstrate such a chain of inferences through a "convincing mosaic of circumstantial evidence" that would permit a jury to infer unlawful retaliation on the part of his employer. *Harper*, 687 F.3d at 307 (citation omitted). Under the "convincing mosaic" analysis, we have recognized three types of circumstantial evidence available to plaintiffs: (1) suspicious timing, ambiguous statements (oral or written) and other "bits and pieces" from which an inference of retaliatory intent might be drawn; (2) evidence that similarly situated employees were treated differently; and (3) evidence that the employer offered a pretextual reason for an adverse employment action. *Coleman*, 667 F.3d at 860 (citations omitted). In his attempt to construct such a mosaic, Anderson suggests only that he has already offered evidence of

suspicious timing and pretext. Such a conclusory allegation is insufficient to raise an issue of material fact.

Indeed, there is no circumstantial evidence in this case which would permit a jury to infer USPS engaged in retaliation in the present case. With respect to "suspicious timing," we have explained that "[c]lose temporal proximity provides evidence of causation and may permit a plaintiff to survive summary judgment provided that there is other evidence that supports the inference of a causal link." *Scaife v. Cook Cnty.*, 446 F.3d 735, 742 (7th Cir. 2006) (citation omitted). In *Coleman*, for example, we found evidence of causation sufficient to withstand summary judgment where adverse actions against an employee commenced one month after she had filed complaints of race and sex discrimination, where the employee had also presented evidence of pretext. 667 F.3d at 861. By contrast in *Amrhein v. Health Care Serv. Corp.*, 546 F.3d 854 (7th Cir. 2008), we determined that a three-month period between an adverse action and protected activity, on its own, was not enough to create a jury issue on the inference of retaliation. *Id.* at 859.

In the present case, Anderson cannot point to temporal proximity between protected activity and adverse action on the part of USPS. As the district court recognized, interpreting the evidence in the light most favorable to Anderson might permit an inference that Anderson's request for reasonable accommodation was denied (constituting alleged adverse action) when Lee spoke with Greiser in August 2005 and when they failed to convene the full reasonable accommodation

committee. However, his most recent protected activity, an EEO filing in July 2004, had occurred a full thirteen months before this alleged adverse action. Thus, the thirteen-month period that elapsed between Anderson's protected activity and adverse action, without more, does not create a genuine issue of fact on the inference of retaliation.

Nor has Anderson presented any evidence that similarly situated employees were treated differently or that USPS acted pretextually. Anderson has not identified other employees who did not file EEO complaints (or engage in similar protected activity) that received more favorable treatment. Because he has failed to allege that anyone was similarly situated to him but treated better, his claim fails. He likewise has not identified any specific evidence which would indicate that USPS at any time acted pretextually. Thus, Anderson has not raised an issue of material fact with which would permit a reversal of summary judgment under the "direct approach" to retaliation claims.

For the first time on appeal, Anderson also advances arguments under the "indirect approach" of proving causation. Because Anderson did not raise this argument below, electing instead to proceed exclusively under the direct method of proof, he has waived this theory of recovery on appeal. *See Hottenroth v. Village of Slinger*, 388 F.3d 1015, 1033 (7th Cir. 2004) ("[F]ailure to raise an issue before the district court results in waiver of that issue on appeal." (quoting *United States v. Shorty*, 159 F.3d 312, 313 (7th Cir. 1998))). We accordingly affirm the grant

of summary judgment in defendant's favor with respect to Anderson's retaliation claim.

### B. Disability Discrimination, Failure to Accommodate, and FMLA Claims

Anderson's *pro se* complaint asserted both disability discrimination and reasonable accommodation claims, in addition to his retaliation claim. However, he elected to omit the disability discrimination and reasonable accommodation claims from his two subsequent amended complaints, failing to reassert them until his response to USPS's summary judgment motion.

Anderson's second amended complaint represents the governing document in this case. *See Carver v. Condie*, 169 F.3d 469, 472 (7th Cir. 1999) ("Once the amended complaint was filed . . . it became the governing document in the case and any allegations . . . not brought forward fell by the wayside."); *see also Wellness Community-Nat'l v. Wellness House*, 70 F.3d 46, 49 (7th Cir. 1995) (it is "well established that the amended pleading supersedes the original pleading"). Anderson thus cannot now rely upon the allegations of disability discrimination and failure to accommodate contained in his *pro se* complaint. *See Wellness Community-Nat'l*, 70 F.3d at 49 (explaining that the original pleading, once superseded, cannot be used to cure defects in the amended pleading). Because Anderson chose to omit the previously asserted disability discrimination and reasonable accommodation claims from his second amended complaint, the governing document in the case, these claims are waived.

*See Winforge, Inc. v. Coachmen Industries, Inc.*, 691 F.3d 856, 872 (7th Cir. 2012) (citation omitted) (explaining that waiver applies where a party voluntarily or intentionally relinquishes a known right).

Nor is it sufficient that Anderson reasserted these claims in his response to USPS's motion for summary judgment; a plaintiff "may not amend his complaint through arguments in his brief in opposition to a motion for summary judgment." *Grayson v. O'Neill*, 308 F.3d 808, 817 (7th Cir. 2002) (quoting *Shanahan v. City of Chicago*, 82 F.3d 776, 781 (7th Cir. 1996)). By then, USPS, relying on Anderson's second amended complaint, had not received the fair notice required by the federal pleading rules. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545 (2007).

It should be noted that Anderson's second amended complaint does mention USPS's alleged failure to accommodate him. However, these references appear under the heading of, and in furtherance of, Anderson's single retaliation claim, serving to identify different required elements of that claim. First, the complaint states that Anderson had a right to request accommodation under the Rehabilitation Act. Viewed in context, this statement amounts to an allegation that Anderson's conduct constituted protected activity, an element of Anderson's retaliation claim. *Caskey*, 535 F.3d at 593. Similarly, the complaint notes that by failing to accommodate Anderson, USPS retaliated against him, causing him physical, mental, and emotional injury. These allegations serve to identify the alleged materially adverse

employment action undertaken by USPS, another element of his retaliation claim. *Id.* We have emphasized that post-*Twombly*, a complaint must describe a claim "in sufficient detail to give the defendant fair notice of what the claim is and the ground upon which it rests." *Tamayo v. Blagojevich*, 526 F.3d 1074, 1084 (7th Cir. 2008) (citation omitted). Anderson's references to accommodation, employed in service of his retaliation claim, did not provide USPS with fair notice of an independent reasonable accommodation claim.[2]

Anderson also asserted violations of the FMLA for the first time in his response to USPS's motion for summary judgment. Anderson waived these claims. *See Abuelyaman v. Ill. State Univ.*, 667 F.3d 800, 806 (7th Cir. 2011) (upholding the district court's rejection of a new theory of discrimination raised for the first time in opposition to summary judgment); *Grayson*, 308 F.3d at 817 (finding claims raised for the first time in opposition to summary judgment waived); *Andree v.*

---

[2] The district court determined that even if Anderson's failure to accommodate claim had been properly pled, it would have failed on the merits. While we agree that Anderson's failure to accommodate claim was not properly pled, we note that the district court's consideration of the merits of this issue did not examine several potentially significant disputes of fact. The disputes regarding whether USPS ever provided Anderson with an N95 mask, whether Anderson's asthma actually improved in the manual letters department, and whether Anderson was willing to accept any office job or only one in the security office present a few such examples.

*Ashland Cnty.*, 818 F.2d 1306, 1314 n.11 (7th Cir. 1987) (upholding the district court's rejection of a theory raised for the first time in opposition to summary judgment because their "complaint failed to give fair warning of the theory" to the opposing party).

Anderson argues that his disability discrimination, failure to accommodate, and FMLA claims deserve consideration because the Federal Rules provide that leave to amend a complaint should be freely given "when justice so requires." Fed. R. Civ. P. 15(a). However, Anderson did not move to amend his complaint a third time. Further, Anderson cannot amend his complaint "through arguments in his brief to a motion for summary judgment." *Grayson*, 308 F.3d at 817. Accordingly, the district court did not err in rejecting these claims.

### III. Conclusion

For the foregoing reasons, we AFFIRM the district court's grant of summary judgment in defendants' favor.