In the

# United States Court of Appeals

### For the Seventh Circuit

_____

No. 17-3281

LINDA ROWLANDS,

*Plaintiff-Appellant,*

*v.*

UNITED PARCEL SERVICE –
FORT WAYNE,

*Defendant-Appellee.*

_____

Appeal from the United States District Court for the
Northern District of Indiana, Fort Wayne Division
No. 13-cv-059 — **Robert L. Miller**, **Jr**. *Judge.*

_____

ARGUED MAY 22, 2018 — DECIDED AUGUST 24, 2018

_____

Before FLAUM, and RIPPLE, *Circuit Judges*, and GETTLEMAN,
*District Judge.*[*]

GETTLEMAN, *District Judge*. Linda Rowlands claims that
United Parcel Service ("UPS") discriminated against her be-
cause she had a disability, failed to accommodate her

_____

[*] Of the Northern District of Illinois, sitting by designation.

disability, and retaliated against her when she requested accommodations, all in violation of the Americans with Disabilities Act, 14 U.S.C. § 12111 et seq. ("ADA"). The district court granted UPS' motion for summary judgment on all of Rowlands' claims, finding that she did not have a disability, had waived her failure to accommodate claim, and failed to establish a prima facie case for retaliation. Rowlands appeals only her failure to accommodate and retaliation claims. Because there are genuine disputes of fact that are material to Rowlands' failure to accommodate and retaliation claims, neither of which were waived, we reverse and remand.

## I.

On appeal of a district court's summary judgment decision we summarize the facts in the light most favorable to the non-moving party, in this case Rowlands, and draw all reasonable inferences in her favor. *Malina v. Hospira, Inc.*, 762 F.3d 552, 554 (7th Cir. 2014).

Rowlands worked for UPS at its Fort Wayne facility for more than 25 years before she was fired on July 19, 2012, for changing the time on her time card. In response, Rowlands filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") alleging discrimination based on her age, sex, and perceived disabilities. Rowlands also filed a grievance with her union and was ultimately reinstated. During the grievance proceedings Rowlands told her boss, Steve Liskey, that she believed that she had been fired not for the alleged time card fraud, but because of a knee injury.

Rowlands had, in fact, suffered a number of injuries in the years leading up to her termination, starting in 2005 when she

was hit by a semi-truck and needed a hip replacement. Between February and July of 2012 alone Rowlands suffered three knee injuries, one of which took place at UPS and required surgery. Over the years Rowlands took significant time off from work on multiple occasions to recover from her injuries.

Rowlands returned to work at UPS after being reinstated on September 27, 2012. She was still recovering from her knee surgery at the time but had been cleared by her doctor to work with no restrictions. To aid in her recovery Rowlands wore two different knee braces that contained ice packs and elevated her leg whenever possible. Rowlands claims that she knew UPS intended to terminate her again because her employee ID was never reactivated in UPS' computer system, which meant that she had to use a supervisor's ID to process packages.

According to Rowlands, there were other signs that her days at UPS were numbered. She and her union representative, Steve Harms, claim that UPS established a new set of rules that applied only to Rowlands. For example, Rowlands was no longer allowed to take breaks with coworkers. Additionally, Rowlands alone was prohibited from moving her car from a far, dimly-lit employee parking lot to a closer lot when first shift employees left, making parking spaces closer to the building available. Harms claims that Rowlands' supervisors put her, and only her, under a microscope and watched her constantly, even documenting when she went to the bathroom and for how long. Rowlands was written up on her first day back for failing to record all meals and breaks properly. She was written up again the following day for leaving without permission, which she denied doing.

Rowlands also faced a number of challenges related to her knee injuries both before and after she was terminated for time card fraud. She claims that she discussed her limitations, specifically the severity of her knee pain, with Liskey and that she requested accommodations for her knee injuries, but they were not granted. For example, Rowlands claims that she asked to be trained on computer data entry and forklift operation so she would have to stand less, but was denied. She also asked to use a first-floor bathroom, as opposed to the second-floor employee bathroom, because she had trouble climbing stairs. Liskey denied that request, telling Rowlands that the first-floor bathroom was for management only.

The employee break room was also on the second floor, which meant Rowlands had to sit in the loading dock area to ice and elevate her knee on her breaks. She was unable to do so elsewhere because she was not allowed to leave the building, as were other UPS employees, and had great difficulty navigating the stairs. According to Rowlands, this made it nearly impossible to elevate her knee because she had to sit sideways. Rowlands further claims that she could not elevate her leg at her work station because when she did her coworker, Joe Gropengieser, reported her to Liskey for sitting on the job. Rowlands also requested repeatedly that the six-foot cord to her scanner be replaced with a shorter one because it was a hazard. It was not replaced, and Rowlands tripped on it, re-injuring her knee.

UPS fired Rowlands for the second and final time on January 2, 2013. This time Rowlands was fired for violating UPS' "zero tolerance" Crisis Prevention and Workplace Violence Prevention Policy ("Policy"). That Policy prohibits "the possession and/or use of weapons by any employee on UPS

property" and any "violence related conduct" including threats and "comments or behavior that could reasonably be interpreted as an intent to do harm to employees." Rowlands allegedly violated the Policy on the night of December 19, 2012. As she was leaving that night, Rowlands took a taser out of her coat pocket, turned it on, looked at Gropengieser, who was about ten feet away, and said, "This is so if anyone wants to mess with me." Rowlands then walked out the back door and to her car in the far away, dimly-lit parking lot.

After that exchange Gropengieser reported that Rowlands had threatened him. During an investigation of the incident Gropengieser submitted a written statement to Liskey claiming that he felt "total[l]y threatened" by Rowlands. The next day another UPS employee, and friend of Gropengieser, submitted a written statement to a security guard alleging that he saw Rowlands with a taser on December 13, 2012. Rowlands also submitted a written statement as part of the investigation. Then, on December 27, 2012, an anonymous call was placed to the UPS hotline. The caller claimed to have seen Rowlands "zap" a taser on December 14, 2012. UPS determined that Gropengieser's complaint was substantiated and that the offense was one of extreme seriousness, warranting immediate termination.

Rowlands does not deny, and has never denied, either carrying a taser or turning it on before leaving UPS. In fact, Rowlands admits to doing exactly that every night at the end of her shift for at least ten years. Rowlands' coworkers corroborated her account and expressed surprise that Rowlands was disciplined for carrying a taser after having done so for so long. According to Rowlands, she carried the taser not as a weapon, but as personal protection while she walked alone

through a dark and desolate parking lot late at night. During the time that she had worked at UPS, Rowlands' car had been broken into twice and vagrants had been discovered sleeping in UPS delivery trucks. These events made Rowlands feel unsafe in the parking lot, particularly after she was told that she could no longer move her car closer to the building during her breaks.

Gropengieser's claim that he felt threatened by Rowlands was described by UPS employees as "truly, truly laughable" if not "an outright lie," "just so obviously ridiculous," and "truly ironic." The same UPS employees describe Gropengieser as a nearly six-foot-tall competitive body builder in his thirties known for aggression and bullying who had been fired by UPS once for fighting with a coworker in a nearby parking lot. In fact, Harms claims that Gropengieser threatened him and challenged him to a fight, in Liskey's office, after he confronted Gropengieser for, as Harms describes it, falsely lamenting Rowlands' termination despite having been at least partially responsible for it. According to these employees, it was not possible for Gropengieser to have felt threatened by Rowlands, a woman in her fifties with bad knees.

According to Rowlands, she in no way threatened Gropengieser when she took her taser out and turned it on to make sure that it was working before she left UPS, as she had done nightly for more than a decade. Rowlands also claims that she was unaware that carrying a taser violated the Policy, and that other employees carried similar devices, both tasers and pepper spray, and even large knives, on a regular basis. Rowlands' understanding was that the Policy prohibited employees from carrying firearms only. This was also corroborated by two of Rowlands' coworkers, one of whom carried

pepper spray, and both of whom believed that UPS prohibited firearms only. Indeed, Harms was so convinced of this that he attempted to talk Liskey out of firing Rowlands, suggesting that it was unjustified because there was no documentation in the building indicating that tasers were prohibited, and it was a first offense. According to Harms, Liskey was unrelenting, responding that Rowlands "has been a constant pain in my butt" and "that management has been on me continually about this."

After she was fired the second time Rowlands filed another Charge of Discrimination with the EEOC, this time alleging discrimination based on her knee-related disability, or UPS' regarding her as having a disability, failure to accommodate that disability, and retaliation for engaging in protected conduct. This lawsuit followed. Rowlands attached both of her EEOC charges to her complaint filed in the district court. UPS moved for summary judgment on all claims except for Rowlands' claim that UPS failed to reasonably accommodate her disability, which went unmentioned. In her response brief, Rowlands claimed that UPS had conceded this claim by failing to respond to it. UPS argued in its reply brief that Rowlands had not asserted a failure to accommodate claim in her complaint, and attaching the EEOC charge to the complaint was insufficient to put UPS on notice of the claim. Rowlands was granted leave to file a sur-reply to that argument, and ultimately lost when the district court granted UPS' motion for summary judgment in its entirety, including the failure to accommodate claim.

In granting UPS' motion for summary judgment the district court first found that Rowlands did not have a disability

when she was fired in January 2013.[1] According to the district court, no reasonable jury could find otherwise based on the medical evidence in the record, specifically Rowlands' orthopedists' opinion that she could return to work with no restrictions as of September 2012. The district court then held that Rowlands failed to properly state a failure to accommodate claim because, although the 2013 EEOC charge attached to the complaint alleged that Rowlands had *sought* accommodations, it did not explicitly state that UPS *denied* that request.[2] As for Rowlands' ADA retaliation claim, the district court stated that Rowlands attempted to prove it using the burden-shifting method and analyzed it accordingly. Under such analysis, the district court held that the claim failed because Rowlands had not identified a similarly situated employee who was treated more favorably.

## II.

On appeal, Rowlands argues that the district court committed reversible error when it found that she failed to state a failure to accommodate claim because her EEOC charge did not explicitly state that her requests for reasonable accommodations were denied. According to Rowlands, the district court erred by holding her to a heightened pleading standard, and by neglecting to allow her an opportunity to respond to that point, which was not raised by UPS or addressed by

---

[1] Because Rowlands appeals the district court's rulings related only to her claims that she requested, but was denied, reasonable accommodations and was retaliated against for making such requests, this court will not address the district court's analysis of any of Rowlands' remaining claims.

[2] Rowlands acknowledged in the district court that she failed to allege a failure to accommodate claim in the body of her complaint.

either party. Rowlands further argues that the district court erred in analyzing her retaliation claim under the burden-shifting framework and ultimately denying her claim for failure to identify a similarly situated employee who was treated more favorably.

Our review of the district court's grant of summary judgment is de novo, and we can affirm only if there is no genuine issue of material fact and no reasonable jury could find for Rowlands. *Johnson v. Advocate Health & Hosps. Corp.*, 892 F.3d 887, 894 (7th Cir. 2018). We view all the facts and make all reasonable inferences in her favor. *Id*. at 893. We have stressed in the past, and it is worth repeating, that "a court may not make credibility determinations, weigh the evidence, or decide which inferences to draw from the facts" on summary judgment, and must "avoid[] the temptation to decide which party's version of the facts is more likely true." *Id*. (internal quotations omitted). This can be a difficult task, particularly in fact-intensive cases such as this.

The ADA prohibits employers from discriminating against qualified individuals due to a disability. *Rodrigo v. Carle Found. Hosp.*, 879 F.3d 236, 241 (7th Cir. 2018). Discrimination under the ADA includes failing to make reasonable accommodations to a qualified employee's disability. *Id*. The ADA also prohibits retaliating against individuals (qualified or not) who have engaged in activities protected by the ADA, such as filing a Charge of Discrimination with the EEOC or requesting reasonable accommodations. *Id*. at 243. A court's conclusion that an individual does not have a disability does not foreclose a retaliation claim. *Dickerson v. Bd. of Trustees of Cmty. Coll. Dist. No. 522*, 657 F.3d 595, 601 (7th Cir. 2011) (citing *Squibb v. Mem'l Med. Ctr.*, 497 F.3d 775, 786 (7th Cir. 2007)).

### A. Failure to Accommodate

To establish a failure to accommodate claim Rowlands must show that: (1) she is both qualified and has a disability; (2) UPS was aware of her disability; and (3) UPS failed to accommodate her disability. *Guzman v. Brown Cty.*, 884 F.3d 633, 642 (7th Cir. 2018). The district court found no need to discuss the first prong in its analysis because it held that Rowlands failed to satisfy the third, but it implicitly found that Rowlands failed to satisfy the first prong when it held that no reasonable jury could find Rowlands disabled for purposes of her disability discrimination claim, which is not a subject of this appeal. As for the third prong, the district court held that Rowlands failed to satisfy it by not explicitly stating in her 2013 EEOC charge that UPS failed to grant the accommodations she requested. We find both conclusions erroneous.

Taking the second point first, Rowlands sufficiently stated a failure to accommodate claim in her 2013 EEOC charge, which was attached to her amended complaint and read, in pertinent part, as follows:

> Complainant tried to engage in the interactive process and tried to get reasonable accommodations (such as wearing her knee brace, eliminating the existence of the cord which Complainant ultimately tripped over causing more serious injuries to her knee).
>
> Complainant [] contends that she was retaliated against for having engaged in protected conduct–filing previous Charges of Discrimination and trying to engage in the interactive

process/making requests for reasonable accommodations.

Rowlands concedes that these sentences were absent from her amended complaint, which did not articulate a failure to accommodate claim, but argues, as she did in the district court, that under Federal Rule of Civil Procedure 10(c) her attached EEOC charges are part of the pleading and sufficient to put UPS on notice that she was asserting a failure to accommodate claim. The district court implicitly rejected UPS' argument to the contrary by analyzing the language contained in the EEOC charges, but then held that UPS was not put on notice of the claim because Rowlands did not explicitly state that her requests for reasonable accommodations were denied.

The district court properly incorporated the facts articulated in the attached EEOC charges into Rowlands' complaint, but erred in finding that they failed to state a failure to accommodate claim. As Rowlands points out, when a person files a charge with the EEOC claiming that they "tried to engage in the interactive process and tried to get reasonable accommodations," it logically follows that those efforts were not fruitful. Otherwise there would be no need to include those details in the charge.

UPS and the district court relied primarily on *Hooper v. Proctor Health Care Inc.*, 804 F.3d 846 (7th Cir. 2015), to support the notion that Rowlands failed to state a failure to accommodate claim. *Hooper* is easily distinguished. In *Hooper* the plaintiff failed to assert a failure to accommodate claim in his complaint and, critically, failed to attach his EEOC charge to his complaint. Instead, the plaintiff argued that, because his "complaint alleged that he was a qualified individual with a disability" it "therefore included a failure to accommodate

claim because the definition of a qualified individual is one
who, 'with or without *reasonable accommodation*, can perform
the essential functions of the employment position that such
individual holds.'" *Id*. at 851 (emphasis supplied) (quoting 42
U.S.C. § 12111(8)). Rowlands makes no such argument, and
need not because her 2013 EEOC charge included a failure to
accommodate claim and was attached to her complaint. As
UPS acknowledges, in *Hooper* there was no mention of the
EEOC charge until the plaintiff attached it to his response
brief in opposition to summary judgment. Accordingly,
*Hooper* does not control.

UPS also argues on appeal that Rowlands "may not use
her opposition to summary judgment as a backdoor tech-
nique to amend her complaint," citing *Anderson v. Donahoe*,
699 F.3d 989 (7th Cir. 2012). *Anderson* is equally inapt. In *An-
derson* the plaintiff asserted a failure to accommodate claim in
a complaint that he filed *pro se*, but failed to assert such a claim
in his counseled second amended complaint. *Id*. at 997. The
plaintiff then attempted to assert a failure to accommodate
claim in his opposition to summary judgment. *Id*. This court
recognized that the second amended complaint was the oper-
ative complaint and consequently held that the claim was
waived because "a plaintiff may not amend his complaint
through arguments in his brief in opposition to a motion for
summary judgment." *Id*. (internal quotations omitted). This
uncontroversial observation does nothing to further UPS' po-
sition because Rowlands attached her EEOC charge, which ar-
ticulated a failure to accommodate claim, to her complaint.

Under Federal Rule of Civil Procedure 8(a) Rowlands was
required to include in her complaint "a short and plain state-
ment of [her] claim[s]" to give UPS fair notice of each of her

claims "and the grounds upon which [they] rest[]." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955 (2007) (internal quotations omitted). Rowlands was not obligated, however, to plead "facts that bear on the statutory elements of a claim." *Chapman v. Yellow Cab Coop.*, 875 F.3d 846, 848 (7th Cir. 2017). Instead, the Federal Rules of Civil Procedure "require[] plaintiffs to plead *claims* rather than facts corresponding to the elements of a legal theory." *Id*. (emphasis supplied). It is therefore "manifestly inappropriate for a district court to demand that complaints contain all legal elements (or factors) plus facts corresponding to each." *Id*. "It is enough to plead a plausible claim, after which 'a plaintiff receives the benefit of imagination, so long as the hypotheses are consistent with the complaint.'" *Id*. (quoting *Twombly*, 550 U.S. at 563).

As the district court recognized, Rowlands' 2013 EEOC charge was incorporated into her complaint, and was therefore a part of it for all purposes. Fed. R. Civ. P. 10(c). In that charge Rowlands alleged that she "tried to engage in the interactive process and tried to get reasonable accommodations" and that she "was retaliated against for … trying to engage in the interactive process/making requests for reasonable accommodations." Those allegations were sufficient to put UPS on notice that Rowlands was asserting a failure to accommodate claim. From there, Rowlands "should have receive[d] the benefit of imagination" rather than being expected to plead each element of an ADA retaliation claim, namely that her request for accommodations was denied. *Id*. This is especially so where, as here, the case proceeded to the summary judgment stage "with a full description of the facts," supporting Rowlands' contention that her requests for accommodations were denied. *Id*.

Because the facts alleged in Rowlands' 2013 EEOC charge were both adequate to state a failure to accommodate claim and incorporated into her complaint, Rowlands did not waive the claim.

As for the first prong of Rowlands' failure to accommodate claim, the district court erroneously held that she was not disabled because she had been cleared to work without restrictions. Under the ADA, a disability is "a physical or mental impairment that substantially limits one or more major life activities." 42 U.S.C. § 12102(1). "[M]ajor life activities include, but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." 42 U.S.C. § 12102(2). A person with such an impairment has a disability "even if the impairment is 'transitory and minor.'" *Gogos v. AMS Mech. Sys., Inc.*, 737 F.3d 1170, 1172 (7th Cir. 2013) (quoting 42 U.S.C. 12101(3)(B)).

According to Rowlands, her knee injuries substantially interfered with her ability to walk, stand, squat and kneel. These claims are sufficient to support Rowlands' claim that she has a disability. Although UPS would have been entitled to request a doctor's note verifying Rowlands' condition as part of the interactive process, it does not follow that she did not have a disability because her doctor had cleared her to return to work without restrictions. Additionally, Rowlands informing Liskey of her limitations and needed accommodations was sufficient to put UPS on notice that it was expected to engage in the interactive process. *See E.E.O.C. v. Sears, Roebuck & Co.*, 417 F.3d 789, 804 (7th Cir. 2005) ("Where notice is ambiguous as to the precise nature of the disability or desired

accommodation, but it is sufficient to notify the employer that the employee may have a disability that requires accommodation, the employer must ask for clarification."). UPS was not entitled, under such circumstances, to simply ignore Rowlands' requests, regardless of whether she had been cleared to work without restrictions. *See id.* ("[A]n employer cannot shield itself from liability by choosing not to follow up on an employee's requests for assistance, or by intentionally remaining in the dark.").

Because Rowlands did not waive her failure to accommodate claim and questions of material fact remain as to whether Rowlands had a disability and to what extent she required accommodations, the district court erred in granting summary judgment to UPS on this claim.

### B. Retaliation

To establish a retaliation claim, Rowlands "must demonstrate that she engaged in protected activity, that she suffered an adverse action, and that there is a causal connection between the two."*Rodrigo*, 879 F.3d at 243. As mentioned above, a plaintiff may pursue a retaliation claim "regardless of whether the initial claims of discrimination are meritless." *Dickerson*, 657 F.3d at 601.

The district court analyzed, and rejected, Rowlands' retaliation claim under the burden-shifting, or "indirect" method established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).[3] Although we have

---

[3] Under the burden-shifting framework a plaintiff must first establish that: (1) she "engaged in statutorily protected activity"; (2) she "was performing [her] job satisfactorily"; and (3) she "was singled out for an adverse employment action that similarly situated employees who did not

acknowledged that the indirect method can be a "an efficient way to organize, present, and assess evidence in discrimination cases," *Advocate Health*, 892 F.3d at 894, we have also warned that efforts to shoehorn the evidence into either the direct or indirect method of proof can "detract[] attention from the sole question that matters: Whether a reasonable juror could conclude that [the plaintiff] would have kept his job if he [did not have the proscribed factor], and everything else had remained the same. *Ortiz v. Werner Enterprises, Inc.*, 834 F.3d 760, 764 (7th Cir. 2016). Accordingly, the legal standard under which we must analyze Rowlands' claim "is simply whether the evidence would permit a reasonable factfinder to conclude that [Rowlands' requests for accommodations] caused the discharge." *Id*. at 765. We find that it would.

To show that retaliation was the "but for" reason for her termination, Rowlands can use either direct or circumstantial evidence. *Monroe v. Indiana Dep't of Transportation*, 871 F.3d 495, 503 (7th Cir. 2017). An admission that UPS fired Rowlands in retaliation for her requests for accommodations would be direct evidence. *Id*. Such evidence is, of course, rare. More often, plaintiffs present circumstantial evidence of discrimination. Such evidence includes: "(1) suspicious timing; (2) ambiguous statements or behavior towards other employees in the protected group; (3) evidence, statistical or otherwise, that similarly situated employees outside of the

---

engage in protected activity did not suffer." *Preddie v. Bartholomew Consol. Sch. Corp.*, 799 F.3d 806, 814 (7th Cir. 2015) (internal quotations omitted). Once a plaintiff establishes a prima facie case, the burden shifts to the employer to articulate a non-discriminatory reason for the adverse action. *Id*. If able to do so, the burden shifts again to the employee to show that the reason given was pretext. *Id*.

protected group systematically receive[d] better treatment; and (4) evidence that the employer offered a pretextual reason for an adverse employment action." *Id*. at 504 (citing *Bunn v. Khoury Enter., Inc.*, 753 F.3d 676, 681 (7th Cir. 2014)). This is often referred to as the "direct" method of establishing employment discrimination.

Rowlands relies on the first and fourth categories of circumstantial evidence to support her retaliation claim, arguing that she was fired shortly after she returned to work from knee surgery, that she constantly requested accommodations that were denied up until her discharge, and that UPS' reason for firing her was pretextual. UPS counters that Rowlands was fired for a legitimate reason: she threatened Gropengieser with a taser, violating the Policy. According to UPS that leaves Rowlands with only suspicious timing, which we have held is insufficient, by itself, to create a jury issue on the inference of retaliation. *See Amrhein v. Health Care Serv. Corp.*, 546 F.3d 854 (7th Cir. 2008). We have also found, however, "evidence of causation sufficient to withstand summary judgment where adverse actions against an employee commenced one month after she had filed complaints of race and sex discrimination, where the employee had also presented evidence of pretext."*Donahoe*, 699 F.3d at 996. Because this latter scenario more closely resembles Rowlands' claim, the district court erred in granting summary judgment for UPS.

As discussed above, there is substantial circumstantial evidence, aside from suspicious timing, that would allow a reasonable juror to infer that UPS' reason for firing Rowlands was pretextual: (1) her employee ID was never reinstated; (2) she was "put under a microscope" and subjected to new rules that applied only to her; (3) she attempted to discuss her

limitations with Liskey, but was rebuffed repeatedly; (4) Liskey complained that she "has been a constant pain in my butt" and "that management has been on me continually about this"; (5) she alone was prohibited from moving her car closer to the building during her breaks; (6) she was denied access to the first-floor bathroom; and (7) Gropengieser violated the Policy by threatening Harms in front of Liskey, and suffered no adverse action as a result. Additionally, Rowlands has provided evidence that could allow a reasonable juror to infer that tasers were not explicitly prohibited under the policy, and that Gropengieser's claim that she threatened him was not credible.

We, of course, "cannot second-guess [UPS'] employment decisions to the extent that they were innocently unwise or unfair."*Miller v. Illinois Dep't of Transp.*, 643 F.3d 190, 200 (7th Cir. 2011). "But [Rowlands] has presented sufficient evidence from which a finder of fact could genuinely call into question [UPS'] honesty." *Id*. A reasonable jury could also find that Rowlands' statement to Gropengieser "was not a 'threat' at all, or that even if [UPS] properly construed it as such, its decision to terminate [Rowlands] was a disingenuous overreaction to justify dismissal of an annoying employee who asserted h[er] rights under the ADA." *Id*. "The combination of the ambiguity of the asserted threat," the ambiguity in the Policy, Liskey's comment about Rowlands, the ways she claims to have been singled out, "and the timing [of her termination] provided sufficient evidence to permit a reasonable trier of fact to infer pretext and retaliatory intent." *Id*. at 201.

"In the end a jury might not credit [Rowlands'] evidence and could accept [UPS'] explanations. But given the conflict on material issues, a trial is necessary." *Ortiz*, 834 F.3d at 766.

REVERSED and REMANDED.