NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued April 27, 2021
Decided May 6, 2021

**Before**

DIANE S. SYKES, *Chief Judge*

FRANK H. EASTERBROOK, *Circuit Judge*

MICHAEL Y. SCUDDER, *Circuit Judge*

No. 20-2032

| | |
|---|---|
| GRACE GILFILLAN, *Plaintiff-Appellant*, | Appeal from the United States District Court for the Central District of Illinois. |
| v. | No. 18-1297-MMM |
| BRADLEY UNIVERSITY, *Defendant-Appellee*. | Michael M. Mihm, *Judge*. |

**O R D E R**

Bradley University dismissed Grace Gilfillan from a graduate program after she received a D grade. She sued Bradley, alleging that it failed to accommodate her mental-health disabilities, discriminated against her because of them, and retaliated against her for seeking accommodations. The district court entered summary judgment for Bradley. Because no reasonable jury could find that Bradley denied Gilfillan accommodations, treated her differently because of her disabilities, or retaliated against her, we affirm.

Midway through her graduate program in physical therapy, in early 2016, Gilfillan sought accommodations for her mental-health disabilities. She contacted Bradley's office for student accessibility, explaining that depression and Attention Deficit Hyperactivity Disorder impaired her notetaking skills and increased the time

she needed for tasks. Gilfillan sought accommodations of assistance with notetaking, extended deadlines, a quiet atmosphere and extended time for test taking, and alternatives for course completion from content application past semester deadlines through incomplete status. Shortly after submitting the request, Gilfillan met with the director of the accessibility office. The director approved Gilfillan's requested accommodations with the proviso that she would need to get permission from her professors for any late work to ensure that the extension would not fundamentally alter a course or the program. Beyond these approved measures, Gilfillan later sought an academic coach to help her organize and prioritize her work. Bradley never approved that service as an accommodation.

Despite these and other accommodations, the spring semester in 2016 did not go well for Gilfillan. She decided that she needed to attend a medical program for her disabilities; her attendance took time away from her classes. As a result, her professors further accommodated her by allowing her to receive incompletes in four of her classes. But when she later completed her coursework, she received a C grade in one class. That grade reduced her grade point average to 3.02, and Bradley's graduate programs require students to have an average of at least 3.00 to graduate.

Different problems emerged during the summer of 2016. The clinical director learned that Gilfillan's assigned clinical site was not available. As a result, she placed Gilfillan at another site. That site had a good reputation, was popular with students, and was on Gilfillan's preference list; the site also kept Gilfillan near her support and health networks. Despite this placement, Gilfillan was often tardy, unprepared, and struggled to care for patients. She asserts that she asked for accommodations of a quiet environment and extended time to document her work with patients. But the clinical director does not recall receiving that request and did not offer those measures. In any case, Gilfillan passed the course with a warning from the clinical director about her performance. To help her improve, the chair of the physical therapy department, Dr. Steven Tippett, asked Gilfillan to step down as class president to enable her to meet her academic requirements. Gilfillan agreed.

In the fall of 2016, Gilfillan faced more difficulties. During the semester, the accessibility office told Gilfillan's professors to give her extended time and audio-formatted tests and to allow her to record lectures. But at the end of the semester, Gilfillan received her second C grade. Although her grade average remained 3.02, Dr. Tippett warned that she would face academic probation if it fell below 3.00.

Yet more problems came in the spring semester of 2017. First, miscommunication about Gilfillan's accommodations occurred. The accessibility office told her professors to give her extra time on tests and allow her to record lectures. That office also approved extra time for assignments with professors' approval and notetaking, but it neglected to convey those particular accommodations to her professors. And when Gilfillan sought last-minute extensions on two assignments, her professors denied her requests. Second, concerns about her professionalism arose. When she was late to one class because of a missed alarm, her two professors for the course called her unprofessional and gave her an extra assignment to assess whether she had mastered the covered material. Likewise, a faculty committee, after noting that she was often tardy to other classes, missed classes and meetings, lacked accountability, and procrastinated, warned her about her unprofessional behavior. Third, she received another C, cutting her grade point average to 2.94 and resulting in academic probation and ineligibility to complete her clinical course that summer. Graduate students on probation may remain in Bradley's programs, and they normally have two semesters to get off probation before dismissal. But the faculty decided that, though Gilfillan could remain in the program, she would have just one semester to improve because she had only one more semester of graded classes left to complete her program.

Gilfillan's final semester was the fall of 2017. The accessibility office told Gilfillan's professors to give her extra time for assignments with professors' approval, extra time for examinations, tests in a quiet place, and notetaking services. Despite these accommodations, in one course she turned in assignments late without having sought her professor's consent. Ultimately, she received a D in that course. The program does not retain students who receive a D. And so in December the faculty dismissed her from the program.

In this suit, Gilfillan raises three claims under Title III of the Americans with Disabilities Act, 42 U.S.C. §§ 12181–12189, and Section 504 of the Rehabilitation Act, 29 U.S.C. § 794. She contends that Bradley (1) failed to accommodate her disabilities reasonably; (2) discriminated against her because of her disabilities; and (3) retaliated against her for seeking accommodations. (She also sued for breach of contract under Illinois law but does not pursue that claim on appeal.) The district court entered summary judgment for Bradley. It ruled that, because of her D grade and other shortcomings, Gilfillan no longer qualified for her program in December 2017, even with the reasonable accommodations that Bradley provided then; thus it did not discriminate in dismissing her. On the retaliation claim, the court ruled that, even if

Gilfillan's accommodation requests were protected acts, she had failed to show that Bradley's non-discriminatory reason for her dismissal (her D grade) was pretextual.

On appeal, Gilfillan first contends that Bradley failed to accommodate her disability reasonably and the district court therefore improperly entered judgment on her failure-to-accommodate claim. To proceed to trial on that claim, Gilfillan had to proffer evidence that she was a qualified individual with a disability, with or without reasonable accommodations; that Bradley knew of her disabilities; and that Bradley failed to accommodate them reasonably. *Scheidler v. Indiana*, 914 F.3d 535, 541 (7th Cir. 2019); *see also A.H. by Holzmueller v. Ill. High Sch. Ass'n*, 881 F.3d 587, 592 (7th Cir. 2018) (Rehabilitation Act and ADA are "materially identical"). Under the Rehabilitation Act, Gilfillan also needed to show that Bradley received federal financial assistance, something that Bradley concedes. *See* 29 U.S.C. § 794(a). We resolve Gilfillan's accommodation claim by focusing on the third prong—Bradley did not fail to accommodate Gilfillan reasonably.

Gilfillan received reasonable accommodations from Bradley. She wanted the accommodations of notetaking assistance, recording lectures, extended time for tests in a quiet place, and extended deadlines with professor approval. *See* 45 C.F.R. § 84.44; 34 C.F.R. § 104.44. Although Gilfillan acknowledges that she received those accommodations while at Bradley, she insists that she did not receive all of them continuously throughout each semester; Bradley's accessibility office, for example, did not always promptly communicate some accommodations to her professors. But Gilfillan presents a single failure-to-accommodate claim for her entire time at Bradley, not a separate claim for each moment of each semester. And she fails to show that any short-term communication failure led her to lose access to her classes or other benefits of the program. *See CTL ex rel. Trebatoski v. Ashland Sch. Dist.*, 743 F.3d 524, 529–30 (7th Cir. 2014); *E.E.O.C. v. Sears, Roebuck & Co.*, 417 F.3d 789, 802–03 (7th Cir. 2005); *see also Alexander v. Choate*, 469 U.S. 287, 301 (1985) ("[A] benefit ... cannot be defined in a way that effectively denies otherwise qualified handicapped individuals the meaningful access to which they are entitled[.]").

Gilfillan next argues that Bradley denied her two other accommodations—academic coaching and the ability to extend deadlines without a professor's prior consent—but federal law did not require Bradley to provide them. First, an academic coach—who would have helped Gilfillan to organize her notes and prioritize tasks outside of class—is a "personal service," like traditional tutoring. *See* 45 C.F.R. § 84.44(d)(2); 34 C.F.R. § 104.44(d)(2); U.S. DEP'T OF EDUC., Students with Disabilities Preparing for Postsecondary Education (2011) (tutoring is a personal service). Neither

the ADA nor the Rehabilitation Act required Bradley to provide that level of "individual attention" as an accommodation. *See Southeastern Community College v. Davis*, 442 U.S. 397, 409 (1979); *see also* 45 C.F.R. § 84.44(d)(2); 34 C.F.R. § 104.44(d)(2). Second, Bradley was not required to let Gilfillan dictate to her professors when she would turn in her work. Some deadlines, Bradley could decide, were essential to individual courses as well as the overall program. As a result, Gilfillan needed to discuss proposed extensions with her professors in order to allow them to let her know which ones were firm and which were negotiable. *See A.H. by Holzmueller*, 881 F.3d at 594; 45 C.F.R. § 84.44(a); 34 C.F.R. § 104.44(a).

That brings us to Gilfillan's claims of disability discrimination. Gilfillan first argues that, in dismissing her from the program, Bradley discriminated against her. To survive summary judgment on this claim, Gilfillan had to show that she was "qualified." *See Khan v. Midwestern Univ.*, 879 F.3d 838, 844 (7th Cir. 2018). A person is qualified for a program if she can meet its requirements, as reflected in the program's standards and the judgment of the faculty, with or without reasonable accommodations. *Id*. As just discussed, Gilfillan received reasonable accommodations. And even with those accommodations, she showed that she was not qualified for the program when she was dismissed. At that time, she had not availed herself of her approved accommodation to ask for more time for her work, she had turned in late work without the professor's consent, and she had received a disqualifying D grade in that class. Without a request from Gilfillan for an extension, Bradley did not discriminate against her by holding her to its deadlines, grading her failure to meet them accordingly, and enforcing its policy of dismissing any student who receives a D.

Gilfillan also argues that, before Bradley dismissed her, it discriminated against her in four ways: it assigned her to an inferior clinical site, removed her as class president, gave her extra work, and called her unprofessional. Although the district court did not address those issues directly, there is no need for remand. The parties addressed them in the district court, and no reasonable jury could find that Bradley's acts were unlawful. *See Richards v. U.S. Steel*, 869 F.3d 557, 562 (7th Cir. 2017). Gilfillan had to show that her disability was the but for cause of Bradley's actions. *See Novak v. Board of Trustees of Southern Ill. Univ.*, 777 F.3d 966, 974 (7th Cir. 2015); *A.H. by Holzmueller*, 881 F.3d at 593. She has not. For her clinical placement, the director considered Gilfillan's preferences, the site's reputation, and its popularity, along with the incidental benefit of its proximity to Gilfillan's support network. Likewise, Dr. Tippett asked Gilfillan to step down as class president because she was struggling academically; she received extra work to make up for work or classes she missed; and

she was chided as unprofessional because she missed class and was tardy. Gilfillan offers no evidence that those non-discriminatory explanations were lies. *See Novak*, 777 F.3d at 976–77.

Finally, Gilfillan challenges the entry of summary judgment on her retaliation claims. She urges that she presented evidence that Bradley retaliated against her for requesting accommodations by changing her clinical placement, removing her as class president, assigning her extra work, warning her about unprofessional behavior, and dismissing her from the program. But just as with her discrimination claims, these claims fail because she submitted no evidence of causation. *See Rowlands v. United Parcel Serv.*, 901 F.3d 792, 801 (7th Cir. 2018). Gilfillan needed to show that Bradley took these actions because she asked for her accommodations. *Scheidler*, 914 F.3d at 544. But the only evidence Gilfillan has offered about causation is temporal—each incident occurred after she initially requested accommodations. That is not enough to imply causation. *See Rowlands*, 901 F.3d at 802. And no other evidence suggests that the faculty lied about its reasons for their actions—that her initial clinical placement was unavailable, that she was struggling academically, that she was late to class without excuse, and that she received an unacceptable D. *See Novak*, 777 F.3d at 976–77.

AFFIRMED